**PUBLISH**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

      Plaintiff–Appellee,

v.

JOSEPH EDDY BENOIT,

      Defendant–Appellant.

------------------
VICKY,

      Amicus Curiae.

No. 12-5013

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 4:11-CR-00083-JHP-1)**

Art Fleak, Tulsa, Oklahoma, for the Defendant-Appellant.

Richard A. Friedman (Thomas Scott Woodward, United States Attorney, and Jeffrey A. Gallant, Assistant United States Attorney, Lanny A. Breuer, Assistant Attorney General, and John D. Buretta, Acting Deputy Assistant Attorney General, with him on the briefs), United States Department of Justice, Washington, D.C., for the Plaintiff-Appellee.

Paul G. Cassell, S. J Quinney College of Law at  the University of Utah (James R. Marsh, Marsh Law Firm PLLC, White Plains, New York, and Carol L. Hepburn, Carol L.

Hepburn PS, Seattle, Washington, with him on the briefs), Salt Lake City, Utah, for Amicus Curiae.



Before **LUCERO** and **BALDOCK**, Circuit Judges, and **SKAVDAHL**, District Judge[*].

**LUCERO**, Circuit Judge.

Joseph Benoit was convicted of receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2) and (b)(1), and possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2). He was sentenced to concurrent terms of 125 and 120 months' imprisonment and ordered to pay $11,466 in restitution. He challenges his conviction and sentence on several grounds.

Benoit contends that the district court erred in denying his motion to suppress evidence obtained from a search of his computer. We reject this claim. Law enforcement officials seized Benoit's computer after his girlfriend discovered child pornography on it. The Fourth Amendment is "wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official." United States v. Jacobsen, 466 U.S. 109, 113 (1984) (quotation omitted). On the record before us, it is clear that the officer called to Benoit's residence acted as a mere witness

---

[*] The Honorable Scott W. Skavdahl, United States District Judge for the District of Wyoming, sitting by designation.

while private individuals showed the officer child pornography. Without any indication that the officer instigated or encouraged the private search, we conclude that the officer did not search Benoit's computer within the meaning of the Fourth Amendment. We also conclude that the officer properly seized Benoit's computer given the plainly evident incriminating character of the child pornography.

Benoit also challenges his convictions for both receipt and possession of child pornography under the Double Jeopardy Clause. We agree with Benoit that possession is a lesser included offense of receipt in cases in which the same child pornography forms the basis of each charge. We join several of our sibling circuits in so holding. See United States v. Muhlenbruch, 634 F.3d 987, 1003 (8th Cir. 2011) (collecting cases). And we reject the government's assertion that the convictions in this case are related to separate depictions. Absent a clear indication that Congress intended multiplicitous punishments for receipt and possession, both convictions cannot stand.

Finally, Benoit argues that the district court's restitution order was improper. In accord with the majority of circuits to have considered the issue, we hold that 18 U.S.C. § 2259 requires a showing that a victim's losses are proximately caused by the defendant's conduct. See United States v. Aumais, 656 F.3d 147, 153 (2nd Cir. 2011). Because the district court did not explain whether specific losses suffered by the victim were proximately caused by Benoit's actions, we remand for a redetermination of the portion of damages allocable to Benoit.

We affirm as to Benoit's numerous remaining claims. Exercising jurisdiction

-3-

under 28 U.S.C. § 1291, we affirm in part, reverse in part, and remand for further proceedings.

## I

Benoit and his girlfriend, Rose DeGraffenreid, resided in Tulsa, Oklahoma, in a home rented by DeGraffenreid. On the morning of July 15, 2010, Officer Mark Moore of the Tulsa Police Department ("TPD") responded to a call from DeGraffenreid's residence relating to child pornography. When Moore arrived at the residence, he was greeted by DeGraffenreid, who invited him in and explained that while she was using Benoit's computer to pay bills, she had found what appeared to be child pornography on his computer.

DeGraffenreid and Nicole Kidd, a relative of DeGraffenreid's residing with her at the time, led Moore to a room used as an office that had two computers. The office was unlocked. Benoit's computer was on and open to the main desktop page. Because DeGraffenreid was not "computer-savvy," she had Kidd open a child pornography video they had found. Kidd said "I can show it to you," to which Moore responded "Okay." Kidd then "clicked on an icon and opened up" the video. Kidd offered to open additional files, but Moore told her that was not necessary.

Moore then called Detective Scott Gibson with the TPD's cybercrimes unit. Gibson instructed Moore to seize the computer and obtain witness statements from DeGraffenreid and Kidd. DeGraffenreid did not object to Moore taking possession of the computer. Moore testified at a later suppression hearing that the computer was "in a

-4-

common area," that it appeared "both Ms. DeGraffenreid and Ms. Kidd had joint use and free access to the computer," and that he never "direct[ed] Ms. DeGraffenreid or Ms. Kidd to do anything . . . [a]ll their actions were voluntary."

On July 23, 2010, a magistrate judge issued a search warrant authorizing the search of Benoit's computer. Sergeant Malcolm Williams of the TPD cybercrimes unit found over 320 images and approximately eighty videos of child pornography. A few days later, Benoit called Sergeant Williams and asked for a meeting. Sergeant Williams and Detective Gibson met and interviewed Benoit at a truck stop, during which Benoit admitted to having downloaded child pornography over a period of several years. Benoit wrote and signed a statement to that effect.

In June 2011, Benoit was charged in a two-count indictment with receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2) and (b)(1) ("Count One") and possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2) ("Count Two"). He moved to suppress the evidence taken from his computer and to dismiss the indictment for lack of an interstate commerce nexus. The assigned magistrate judge recommended denial of both motions. Over Benoit's objections, the district court adopted the magistrate judge's recommendations. Benoit's motion for a bill of particulars seeking to differentiate the count of receipt and count of possession based on potential double jeopardy issues was also denied.

At trial, a jury found Benoit guilty on both counts. Benoit filed various post-trial motions, including a motion for a new trial. All post-verdict motions were denied.

Benoit was sentenced to concurrent terms of 125 and 120 months' imprisonment and was ordered to pay $11,466 in restitution to one of the victims who appeared in a depiction of child pornography possessed by Benoit. Benoit appeals.

## II

We first consider Benoit's Fourth Amendment claim. A denial of a motion to suppress is reviewed de novo. United States v. McGehee, 672 F.3d 860, 866 (10th Cir. 2012). We accept the district court's factual findings unless they are clearly erroneous and view the evidence in the light most favorable to the government. Id. "The ultimate question of reasonableness under the Fourth Amendment is a legal conclusion that we review de novo." United States v. Burgess, 576 F.3d 1078, 1087 (10th Cir. 2009).

Benoit argues that Officer Moore's inspection and seizure of his computer without first having obtained a search warrant violated his Fourth Amendment rights. He claims that DeGraffenreid lacked actual or apparent authority to consent to Officer Moore's search of his computer because she had informed Moore that the computer did not belong to her.

Subject to limited exceptions, the Fourth Amendment prohibits warrantless searches. Illinois v. Rodriguez, 497 U.S. 177, 181 (1990). Voluntary consent by a third party with actual or apparent authority is a well-established exception to the warrant requirement. United States v. Andrus, 483 F.3d 711, 716 (10th Cir. 2007). "A third party has actual authority to consent to a search if that third party has either (1) mutual use of the property by virtue of joint access, or (2) control for most purposes." Id.

-6-

(quotation omitted). Apparent authority may be found if "the facts available to the officer" at the time of the search would lead a person "of reasonable caution" to believe "that the consenting party had authority over the premises." Rodriguez, 497 U.S. at 188 (quotation omitted). On this basis, "a third party has apparent authority to consent to a search when an officer reasonably, even if erroneously, believes the third party possesses authority to consent." Andrus, 483 F.3d at 716.

**A**

Before addressing the question of consent, we first determine whether Officer Moore's viewing of the child pornography video prior to seizing Benoit's computer constitutes a search covered by the Fourth Amendment. In deciding the issue, we consider Officer Moore's testimony that he was dispatched to DeGraffenreid's residence to investigate a possible child pornography matter. Moore testified that on arriving at the residence:

> A. [DeGraffenreid] told me she had found that stuff on her boyfriend's computer, and she said that I could look at the – that she would show me some of the stuff on the computer. She had [Kidd] take me back and open up a file on the computer.
> . . .
> Q. And where did they take you?
> A. Took me to a room they're using as an office.
> . . .
> Q. Was the computer turned on, one of them?
> A. Yes.
> Q. What, if anything, happened next?
> A. Well, we sat down, [Kidd] sat next to me, and she opened up – she clicked on an icon and opened up a video and showed me the video.
> Q. And how long did you watch the video for?
> A. It wasn't very long. Maybe less than ten seconds.

-7-

Q.  And what, if anything, did you see?
A.  I saw an underage girl, a minor, having sex with an adult male.

DeGraffenreid also testified that Kidd showed the video to Officer Moore.

Based on the foregoing, we conclude that Moore did not conduct a search or direct a private search under the Fourth Amendment. It is well-settled that the Fourth Amendment "proscrib[es] only governmental action; it is wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official." Jacobsen, 466 U.S. at 113-14 (quotation omitted). "However, in some cases a search by a private citizen may be transformed into a governmental search implicating the Fourth Amendment if the government coerces, dominates or directs the actions of a private person conducting the search or seizure." United States v. Poe, 556 F.3d 1113, 1123 (10th Cir. 2009) (quotation omitted).

Accordingly, the question before us is whether the search conducted by DeGraffenreid and Kidd could be construed as a governmental search directed by Officer Moore. We have delineated a two-step inquiry to determine whether a search by a private individual constitutes state action:

> First, we determine whether the government knew of and acquiesced in the [private person's] intrusive conduct. Second, we consider whether the party performing the search intended to assist law enforcement efforts or to further his own ends. Both prongs must be satisfied considering the totality of the circumstances before the seemingly private search may be deemed a government search.

Id. (quotations and citations omitted). We have additionally held that "knowledge and

-8-

acquiescence . . . encompass the requirement that the government agent must also affirmatively encourage, initiate or instigate the private action." United States v. Smythe, 84 F.3d 1240, 1243 (10th Cir. 1996). "[I]f a government agent is involved merely as a witness, the requisite government action implicating Fourth Amendment concerns is absent." Id. (quotation omitted). Police must, in "some affirmative way . . . instigate, orchestrate, encourage or exceed the scope of the private search to trigger application of the Fourth Amendment." Id. (citation omitted).

Applying this test, we conclude that neither DeGraffenreid nor Kidd acted as a government agent in discovering child pornography files on Benoit's computer. There is no evidence that Officer Moore "knew of and acquiesced in" DeGraffenreid's initial search of Benoit's computer. Poe, 556 F.3d at 1123 (quotation omitted). Rather, DeGraffenreid had a "legitimate, independent motivation" to search Benoit's property, and an "independently formed belief that something was dangerous about the [property]." Smythe, 84 F.3d at 1243. DeGraffenreid explained to Moore that she "got on the computer to pay some bills and . . . found some disturbing files that she thought was child pornography." Moreoever, the record is devoid of evidence that the initial search was "intended to assist law enforcement efforts." Poe, 556 F.3d at 1123 (quotation omitted). DeGraffenreid's initial discovery of child pornography was absent of any intent to aid the police.

To the extent that Kidd conducted a secondary search by displaying a video after Officer Moore arrived, that search cannot be characterized as governmental action

-9-

because Moore did not "affirmatively encourage, initiate or instigate the private action." Smythe, 84 F.3d at 1243. Officer Moore did not touch or handle the computer or any of its parts, and did not assist or encourage Kidd as she opened the child pornography file. Kidd appears to have retained full control over Benoit's computer while Moore passively viewed a child pornography video shown to him. As Moore testified, he never "direct[ed] Ms. DeGraffenreid or Ms. Kidd to do anything . . . [a]ll their actions were voluntary."

These facts are quite similar to those presented in Smythe. There, a bus station manager, McCartney, received a suspicious package. Id. at 1241-42. Uncertain as to his authority to open the package, the manager telephoned the police department, which dispatched Sergeant Walker to the station:

> Once at the bus station, Sergeant Walker informed Mr. McCartney that he, Sergeant Walker, believed that Mr. McCartney could open the package but that he, Sergeant Walker, could not. Sergeant Walker never touched the package, did not assist, ask or otherwise encourage Mr. McCartney to open the package and stepped away as Mr. McCartney opened the package. Mr. McCartney testified that the decision to open the package was entirely his, that he was not acting at the request or as an agent of the police in opening the package, and that he would have opened the package regardless of whether the police responded to his call.

Id. at 1242. We held that "the search in question is not a governmental search implicating the Fourth Amendment." Id. at 1243. Like Sergeant Walker, Moore acted as "merely a witness" while a private citizen took action, and he did not "instigate[],

-10-

orchestrate[] or encourage[] the search." Id. (quotation omitted).[1]

Although Officer Moore responded "Okay" when Kidd offered to show the video, this response does not transform an otherwise private search into a government intrusion. Fourth Amendment concerns are not implicated "when a private person voluntarily turns over property belonging to another and the government's direct or indirect participation is nonexistent or minor." Smythe, 84 F.3d at 1243 (quotation omitted). Every instance in which a private citizen turns contraband over to the police features some form of passive acceptance from an officer. Moreover, because DeGraffenreid and Kidd had already viewed the child pornography, this was not a case in which officers could only speculate about the contents of Benoit's computer. See Walter v. United States, 447 U.S. 649, 657 (1980) ("Even though some circumstances—for example, if the results of the private search are in plain view when materials are turned over to the Government—may justify the Government's re-examination of the materials, the Government may not exceed the scope of the private search unless it has the right to make an independent search."). Because the record shows that Officer Moore merely acted as a witness, we conclude he did not search Benoit's computer on July 15, 2010.

---

[1] We have stated that, at least for some purposes, computers fall into "the same category as suitcases, footlockers," and other containers that "command a high degree of privacy." Andrus, 483 F.3d at 718 (quotation and alteration omitted). But see Burgess, 576 F.3d at 1088 ("Analogies to closed containers or file cabinets may lead courts to oversimplify a complex area of Fourth Amendment doctrines and ignore the realities of massive modern computer storage." (quotation and alteration omitted)). Pursuing that analogy here, Kidd's action in opening the file while Moore stood by is akin to McCartney's opening of the package while Sergeant Walker observed.

**B**

Having established that the Fourth Amendment did not apply to Moore's initial observation of Benoit's computer, we next consider whether Moore's seizure of the computer was permissible. An officer may seize evidence of a crime without a warrant if three conditions are met: (1) "the seizing officer must not have violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed"; (2) "the item must not only be in plain sight, but its incriminating character must also be immediately apparent"; and (3) the officer must "have a lawful right of access to the object." United States v. Naugle, 997 F.2d 819, 822 (10th Cir. 1993) (quotations omitted).

We conclude all three prongs have been satisfied. With respect to the first, it is clear that DeGraffenreid had actual authority to invite Moore into her shared home and into the shared office. DeGraffenreid had both "mutual use of the property by virtue of joint access" and "control for most purposes" over the office as the renter of the shared home. Andrus, 483 F.3d at 716 (quotations omitted). Benoit does not contend otherwise; he challenges only DeGraffenreid's authority over his computer.

Regarding the second prong, Officer Moore was situated in front of Benoit's computer when Kidd began playing the video and thus was in a "place from which the evidence could be plainly viewed." Naugle, 997 F.2d at 822. Furthermore, the incriminating character of the child pornography was immediately apparent. Moore testified that the video showed a minor female having sex with an adult male and that

-12-

there was no doubt in his mind that the video depicted child pornography. Accordingly, "upon viewing the object, the officer . . . at that moment ha[d] probable cause to believe the object to be contraband." United States v. Tucker, 305 F.3d 1193, 1202-03 (10th Cir. 2002); see also Horton v. California, 496 U.S. 128, 130 (1990) (noting that "even though inadvertence is a characteristic of most legitimate 'plain-view' seizures, it is not a necessary condition").

As for the third prong, we have stated that the lawful access factor "is implicated in situations such as when an officer on the street sees an object through the window of a house, or when officers make observations via aerial photography or long-range surveillance." Naugle, 997 F.2d at 823. Under those circumstances, "officers cannot use the plain view doctrine to justify a warrantless seizure, because to do so would require a warrantless entry upon private premises." Id. There was "no such problem" in Naugle because the contraband "was in the closet where the officer was permitted to be, and he did nothing more than reach out to the box containing the [contraband]." Id. Similarly, Moore was permitted to be in the office of DeGraffenreid's residence, and having been shown evidence of child pornography, had sufficient probable cause to believe Benoit's computer contained child pornography. At that moment, Moore "did nothing more than reach out to" seize the contraband. His seizure of the computer was justified under the

-13-

plain view doctrine.[2]

## III

This brings us to Benoit's claim that his convictions for receipt of child pornography under 18 U.S.C. § 2252(a)(2) and possession of child pornography under 18 U.S.C. § 2252(a)(4)(B) violated his rights under the Double Jeopardy Clause. He contends that possession is a lesser included offense of receipt, and that multiplicitous punishments for both offenses is improper. We review claims of multiplicity de novo. See United States v. Johnson, 130 F.3d 1420, 1424 (10th Cir. 1997).

## A

The Double Jeopardy Clause protects a defendant "against cumulative punishments for convictions on the same offense." Ohio v. Johnson, 467 U.S. 493, 500 (1984). The Clause is implicated if two statutes prohibit the same act or transaction, typically because one is a lesser included offense of the other. See Rutledge v. United States, 517 U.S. 292, 297 (1996). Multiplicitous sentences are not wholly proscribed; if "multiple counts for which a defendant is convicted cover the same criminal behavior, our review is limited to whether Congress intended multiple convictions and sentences under the statutes." United States v. Morehead, 959 F.2d 1489, 1506 (10th Cir. 1992).

---

[2] In his reply brief, Benoit argues that Moore exceeded the scope of consent given by DeGraffenreid, even assuming there was consent. However, Benoit failed to raise this in his opening brief and thus the argument is waived. See Colorado Springs v. Solis, 589 F.3d 1121, 1135 n.5 (10th Cir. 2009) ("[A]rguments not raised in the opening brief are waived."). Benoit does not challenge the post-warrant search of his computer.

We "presume that where two statutory provisions proscribe the same offense, a legislature does not intend to impose two punishments for that offense." Rutledge, 517 U.S. at 297 (quotation omitted). However, this presumption is not controlling if "there is a clear indication of contrary legislative intent." Missouri v. Hunter, 459 U.S. 359, 367 (1983) (quotation omitted).

If "the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Blockburger v. United States, 284 U.S. 299, 304 (1932); see also United States v. Sturm, 673 F.3d 1274, 1287 (10th Cir. 2012) (same). "Because we must assume that Congress legislated with Blockburger in mind, we presume, absent express Congressional intent to the contrary, that Congress intended multiple convictions and sentences for the same criminal behavior which violates more than one statute when each statute requires proof of a fact that the other does not." Morehead, 959 F.2d at 1506 (citation omitted). The Court has recognized that "the Blockburger test focuses on the proof necessary to prove the statutory elements of each offense, rather than on the actual evidence to be presented at trial." Illinois v. Vitale, 447 U.S. 410, 416 (1980). And the test articulated in Blockburger can be met even with "substantial overlap in the proof offered to establish the crimes." Iannelli v. United States, 420 U.S. 770, 785 n.17 (1975).

Applying Blockburger to the charges at issue, we conclude that possession of child pornography is a lesser included offense of receipt of child pornography. Benoit was

-15-

convicted under 18 U.S.C. § 2252(a)(2), which prohibits:

> knowingly receiv[ing] . . . any visual depiction using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer . . . , if—
>> (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
>> (B) such visual depiction is of such conduct.

Benoit was also convicted under 18 U.S.C. § 2252(a)(4), which prohibits:

> knowingly possess[ing] . . . 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if—
>> (i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
>> (ii) such visual depiction is of such conduct.

The jury was instructed that each count required proof of five elements, four of which were materially identical for both charges: (1) production of the visual depictions at issue involved the use of a minor engaging in sexually explicit conduct; (2) the visual depictions were of a minor engaged in sexually explicit conduct; (3) the defendant knew or believed that at least one of the performers in the visual depictions was a minor; and (4) an interstate commerce nexus. With respect to the receipt charge, the government was required to prove that Benoit "knowingly received or attempted to receive" a visual

-16-

depiction.[3] As to the possession charge, the government was required to show that Benoit "knowingly possessed" a visual depiction.

Because the only difference between the elements of the two counts is the distinction between possessing and receiving, the dispositive question under Blockburger is whether one can knowingly receive without also knowingly possessing. This is a question the Supreme Court has answered. In Ball v. United States, 470 U.S. 856 (1985), the Court considered whether a defendant may be convicted of both receiving and possessing the same firearm. Reasoning that "proof of illegal receipt of a firearm necessarily includes proof of illegal possession of that weapon," the Court held that "Congress seems clearly to have recognized that a felon who receives a firearm must also possess it, and thus had no intention of subjecting that person to two convictions for the same criminal act." Id. at 862.

Although there may be meaningful differences between a firearm and a visual depiction of child pornography for some purposes, the Ball Court's conclusion is equally valid in the present context: A defendant cannot knowingly receive a visual depiction of

---

[3] According to Benoit, the jury should have been instructed that the receipt of child pornography requires that the material be received with an intent to distribute. This argument has been foreclosed by our decision in Sturm, in which we held "that an intent to distribute is not required for a receipt-based conviction under § 2252A(a)(2)." 673 F.3d at 1280; accord United States v. Olander, 572 F.3d 764, 770 (9th Cir. 2009); United States v. Irving, 554 F.3d 64, 74 (2d Cir. 2009); United States v. Watzman, 486 F.3d 1004, 1009-10 (7th Cir. 2007).

child pornography without simultaneously possessing it.[4]  As a matter of logic, Benoit

could not have been guilty of receipt without also being guilty of possession.  It follows

that possession of child pornography is a lesser included offense of receipt of the same

child pornography.  Every circuit to have considered this issue has reached the same

conclusion.  See United States v. Ehle, 640 F.3d 689, 695 (6th Cir. 2011) ("'Receiving'

child pornography necessarily requires one to 'possess' that child pornography. . . .

'Possessing' child pornography is a lesser-included offense of 'receiving' the same child

pornography."); Muhlenbruch, 634 F.3d at 1003 ("[P]roof of receiving child pornography

under § 2252(a)(2) necessarily includes proof of illegal possession of child pornography

under § 2252(a)(4)(B) . . . ."); United States v. Bobb, 577 F.3d 1366, 1373 (11th Cir.

2009) ("[W]e find that these provisions, indeed, proscribe the same conduct; by proving

that a person 'knowingly receives' child pornography, the Government necessarily

proves that the person 'knowingly possesses' child pornography."); United States v.

Miller, 527 F.3d 54, 72 (3d Cir. 2008) ("[P]ossession of child pornography in violation of

§ 2252A(a)(5)(B) is a lesser-included offense of receipt of child pornography in violation

---

[4] In Sturm, we rejected the argument that jury instructions were inadequate
because "the terms 'receive' and 'possess' are indistinguishably similar in their common
usage."  673 F.3d at 1278.  We explained that the two terms were not perfectly
synonymous because it would be "possible to unwittingly receive child pornography and
then knowingly continue in possession of it" and "one can knowingly receive child
pornography and then cease possession."  Id. at 1280.  We did not hold, however, that
one could knowingly receive without, in that instant, also possessing.  Cf. Ball, 470 U.S.
at 862 ("When received, a firearm is necessarily possessed." (quotation omitted)).  The
Sturm opinion expressly declined to decide whether possession of child pornography is a
lesser included offense of receipt.  673 F.3d at 1288 n.5.

-18-

of § 2252A(a)(2)."); <u>United States v. Schales</u>, 546 F.3d 965, 978 (9th Cir. 2008) ("[C]omparison of the texts of the receipt offense, § 2252(a)(2), and the possession offense, § 2252(a)(4)(B), reveals that possession is a lesser-included offense of receipt.").[5]

Because possession is a lesser included offense of receipt, Benoit cannot be subject to multiplicitous punishments absent "a clear indication of contrary legislative intent." <u>Hunter</u>, 459 U.S. at 367. Again joining the unanimous holdings of our sibling circuits, we conclude that Congress has not clearly expressed an intent to punish separately the lesser included offense of possession. <u>See</u> <u>Ehle</u>, 640 F.3d at 698; <u>Muhlenbruch</u>, 634 F.3d at 1003; <u>Bobb</u>, 577 F.3d at 1374; <u>Miller</u>, 527 F.3d at 72; <u>United States v. Davenport</u>, 519 F.3d 940, 946-47 (9th Cir. 2008).

Nothing in the statutory text evinces congressional rejection of the <u>Blockburger</u> presumption. The Supreme Court has instructed that if "every proof of [the greater offense] will demonstrate [the lesser offense]," such an "overlap is enough to conclude, absent more, that Congress did not intend to allow punishments for both." <u>Rutledge</u>, 517 U.S. at 304 n.14. As discussed above, one cannot prove that a defendant knowingly received child pornography without also demonstrating that the defendant possessed child

---

[5] Several of the foregoing cases concern convictions for possession under 18 U.S.C. § 2252A(a)(5)(B) rather than 18 U.S.C. § 2252(a)(4)(B). <u>See</u> <u>Ehle</u>, 640 F.3d at 695; <u>Bobb</u>, 577 F.3d at 1373; <u>Miller</u>, 527 F.3d at 72. We agree with the Third and Eighth Circuits that the text of § 2252(a)(4)(B) is "materially identical" to that of § 2252A for purposes of conducting the receipt/possession <u>Blockburger</u> analysis. <u>See</u> <u>Muhlenbruch</u>, 634 F.3d at 1003 & n.6; <u>Miller</u>, 527 F.3d at 64 n.10.

pornography.

We note the similarity between the statutes at issue in this case and those at issue in Ball. See 470 U.S. at 866 (reciting text of statutes prohibiting receipt and possession of firearms for certain classes of individuals). Given that the Court discerned no indication to stray from the Blockburger presumption in Ball, Congress' use of the same terms in § 2252 suggests it did not intend a contrary result. See Ford v. Ford Motor Credit Corp. (In re Ford), 574 F.3d 1279, 1283 (10th Cir. 2009) ("When Congress enacts a statute using a phrase that has a settled judicial interpretation, it is presumed to be aware of the prior interpretation."). And the fact that the two statutes are in close proximity in the United States Code "indicates that Congress understood them to be directed to similar, rather than separate, evils." Rutledge, 517 U.S. at 304 n.14.

In Sturm, we noted that Congress identified separate harms flowing from the possession and distribution of child pornography. 673 F.3d at 1279-80 (quoting Pub. L. No. 104-208, Div. A., Title I, § 101(a), 110 Stat. 3009-26). But even accepting the premise that receipt is bound up with distribution more closely than possession is, we agree with the Sixth Circuit that "all this appears to indicate is that Congress viewed an individual's 'knowingly possessing' child pornography as a separately punishable offense where the same individual had not also 'knowingly received' the same child pornography." Ehle, 640 F.3d at 698. Legislative history of § 2252 supports this conclusion. As the court noted in Ehle:

> [T]he legislative history of the 1990 amendments to the child pornography

statutes, which added the crime of "knowingly possessing" child pornography to a scheme that already included "knowingly receiving" child pornography, indicates that the crime of "knowingly possessing" child pornography was meant as a gap-filling provision, targeting those who "possessed" child pornography without having also "received" the same child pornography.  Senator Thurmond stated, "Current law prohibits the knowing transportation, distribution, receipt or reproduction of child pornography which has traveled in interstate commerce.  Those who simply possess or view this material are not covered by current law.  This legislation corrects this insufficiency."  136 Cong. Rec. S4729 (1990).

640 F.3d at 698.[6]

For the foregoing reasons, we agree with those other circuits that have considered the issue:  Congress has not expressed a clear intent to impose multiplicitous punishments for both receipt of child pornography and the lesser included offense of possession of child pornography.

**B**

Although we hold that possession of child pornography is generally a lesser included offense of receipt and that Congress did not intend to punish these same offenses separately, these conclusions do not end our inquiry.  "Multiplicity refers to multiple counts of an indictment which cover the same criminal behavior."  Morehead, 959 F.3d at 1505 (quotation omitted).  The doctrine has no application in cases in which

---

[6] Although the Ehle case concerned convictions under § 2252A, the above-referenced 1990 amendments added possession to § 2252.  See Child Protection Restoration and Penalties Enhancement Act of 1990, P.L. 101-647, tit. III, subtit. B, § 323(a), (b), 104 Stat. 4816, 4818.  Section 2252A was added to the United States Code in 1996.  See Child Pornography Prevention Act of 1996, P.L. 104-208, tit. I, § 121(3)(a), 110 Stat. 3009-26, 3009-28.

two counts are based on "two distinct sets of conduct." Sturm, 673 F.3d at 1288. In Sturm, for example, the defendant was charged "with knowing possessing of three specific images of child pornography between January 1, 2005, and May 5, 2006" and charged in a separate count with "knowing receipt of child pornography on June 8, 2005." Id. At trial, the government showed that the defendant possessed one set of images, and that he received an entirely different set of images. Id. And the "jury was specifically instructed as to which images were associated with which count." Id. Because the defendant's "convictions and sentences were based on two distinct acts, occurring on two different dates, and proscribed by two different statutes," we held that "the Double Jeopardy Clause is not implicated." Id.

Other circuits have made the same determination in cases in which the government charged and proved distinct instances of receipt and possession. In Bobb, the Fourth Circuit ruled that possession is a lesser included offense of receipt, but affirmed both convictions because they "were based on two distinct offenses, occurring on two different dates, and proscribed by two different statutes." 577 F.3d at 1375. In one count, the defendant was charged with "taking 'receipt' of child pornography on November 12, 2004," and in a second count, he was charged with "having 'possession' of child pornography in August 2005." Id. At trial, the evidence showed that the defendant "received child pornography on November 12, 2004, by downloading . . . seven zip files . . . and, in August 2005, he possessed over 6,000 additional images." Id.

Similarly, in United States v. Halliday, 672 F.3d 462 (7th Cir. 2012), the court

declined to address the lesser included offense issue because it determined that different conduct was alleged and proven for each count. Id. at 470-71. The indictment in that case alleged receipt "on or before" two specific dates, and alleged possession "between" those two dates. Id. at 471. At trial, the prosecutor "both in her opening and closing statements specified that the videos that formed the bases of the receipt counts were downloaded 'on' [the two specified dates] and that the possession counts were related to videos 'between' those dates." Id. And the evidence showed that the defendant downloaded eleven videos between the two dates that were distinct from the pornography he downloaded on those dates. Id. The defendant's multiplicity claim was rejected under the plain error standard. Id. at 467, 471.

In determining whether the charges against Benoit were multiplicitous, we may consider the entire record. See United States v. Swingler, 758 F.2d 477, 492 (10th Cir. 1985). Based on the entire record, it is abundantly clear that the jury convicted Benoit of both receipt and possession based on the same visual depictions. Several factors support this conclusion.

To begin, the indictment uses identical language in both counts. Count One of the indictment charged that Benoit "knowingly received and attempted to receive numerous visual depictions of minors engaging in sexually explicit conduct" from "on or about December 17, 2008 to around July 15, 2010." Count Two charges that Benoit "knowingly possessed and knowingly accessed with intent to view visual depictions of minors engaging in sexually explicit conduct" from "on or about December 17, 2008 to

-23-

around July 15, 2010." To the extent the government intended to charge Benoit for two distinct acts or transactions, it failed to do so in the indictment.[7] Cf. Sturm, 673 F.3d at 1288 (indictment specifically alleged distinct dates for receipt and possession); Bobb, 577 F.3d at 1375 (same).

In addition, both the prosecutor and defense counsel expressly stated to the jury that the two counts were based on identical conduct. In the prosecutor's opening statement, he stated:

> Just a word about the indictment. There are two separate counts. The evidence will be that the first count is receiving the child pornography by downloading it from the Internet over a number of years. Count 2 is possessing that same child pornography that was downloaded and possessed on those hard drives . . . .

(Emphasis added.) And in closing, the prosecution stated that the evidence proved Benoit "sought out, collected, received, and possessed hundreds of images of child pornography [and] over 70-some videos of child pornography." See Halliday, 672 F.3d at 471 (stating that the prosecutor's statements are not evidence, but noting that the prosecutor submitted differing evidence for the jury's consideration as to receipt and possession counts). Defense counsel also stated in closing that both counts related to "the same pictures."

Further, the jury was not instructed that the two counts referred to distinct visual depictions. Cf. Sturm, 673 F.3d at 1288 ("The jury was specifically instructed as to

---

[7] Benoit's motion for a bill of particulars to more clearly delineate the bases of the charges was denied.

-24-

which images were associated with which count . . . .").  In <u>United States v. Frierson</u>, 698 F.3d 1267 (10th Cir. 2012), we held that a jury must be "adequately instructed that they could not find Defendant guilty of more than one count of conspiracy unless they were convinced beyond a reasonable doubt that he entered into two separate agreements to violate the law."  <u>Id.</u> at 1270 (quotation and alteration omitted).  Because the jury was not so instructed, and because nothing in the prosecutor's closing argument distinguished the two conspiracy counts, we held that the charges were "plainly multiplicitous."  <u>Id.</u>  This was so despite an "instruction to the jurors that they 'separately consider each defendant and each Count'" similar to that provided in this case.  <u>Id.</u>

Finally, we see nothing in the manner the evidence was presented at trial that would suggest to the jury that the two counts related to distinct images.  Only one argument is advanced by the government in support of its claim to the contrary.  It relies on a summary chart that contained information about 323 images and seventy-five videos.  The prosecution notes that one image and all seventy-five videos included a "file created" date that corresponded to the date Benoit received the depiction.  Remaining images depicted on the chart, along with twenty-seven other images and eight other videos that were introduced but did not appear on the chart, did not have file created dates.  We are told by the government that the receipt charge was based on but a single image and seventy-five videos that reference a file creation date.

We reject the government's argument, which is contradicted by the prosecutor's own statements at trial.  As noted above, the prosecution stated that "the first count is

-25-

receiving the child pornography by downloading it from the Internet over a number of years" and that "Count 2 is possessing that same child pornography that was downloaded." The prosecution also stated that Benoit "sought out, collected, received, and possessed hundreds of images of child pornography [and] over 70-some videos of child pornography." These statements cannot be squared with the present assertion that the receiving count related to a subset of depictions that included only a single image. Further, the jury was never alerted to the fine distinction now made with respect to the file creation date and the distinct charges. To the contrary, the government witness who presented the chart testified that all of the images and videos—both those referenced on the summary chart and the others—were downloaded from the internet by Benoit.

In light of the record as a whole, it is clear that Benoit was convicted of both receipt of child pornography under § 2252(a)(2) and possession under § 2252(a)(4) based on the same conduct. Although the government may submit multiplicitous counts to the jury, "multiplicitous sentences violate the Double Jeopardy Clause." Frierson, 698 F.3d at 1269 (quotation omitted). Under these circumstances, "the district court must vacate one of the convictions." Id. (quotation omitted). We reverse and remand so that the district court may do so.

## IV

We turn to Benoit's appeal of the district court's order that he pay restitution of $11,466. Legal sentencing determinations concerning restitution are reviewed de novo. United States v. Masek, 588 F.3d 1283, 1287 (10th Cir. 2009). Factual findings are

reviewed for clear error and the amount of restitution is reviewed for abuse of discretion. United States v. Osborne, 332 F.3d 1307, 1314 (10th Cir. 2003).

**A**

The Supreme Court has recognized that the distribution of child pornography is "intrinsically related to the sexual abuse of children" because, inter alia, "the materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by [its] circulation." New York v. Ferber, 458 U.S. 747, 759 (1982). Recognizing this connection, § 2259 requires district courts to order restitution in child pornography cases to victims, defined as any "individual harmed as a result of a commission of a crime under this chapter." § 2259(c). The restitution order must direct payment of "the full amount of the victim's losses," § 2259(b)(1), which include:

> (A) medical services relating to physical, psychiatric, or psychological care;
> (B) physical and occupational therapy or rehabilitation;
> (C) necessary transportation, temporary housing, and child care expenses;
> (D) lost income;
> (E) attorneys' fees, as well as other costs incurred; and
> (F) any other losses suffered by the victim as a proximate result of the offense.

§ 2259(b)(3)(A)-(F).

Amicus curiae "Vicky," the recipient of the restitution ordered below, argues that the proximate cause requirement in § 2259(b)(3)(F) applies only to that subsection. She relies on the statute's use of the terms "full amount of the victim's losses" and "any costs incurred by the victim," § 2259(b)(3), noting that the only language in the restitution statute expressly limiting recovery to losses that are the "proximate result" of a

-27-

defendant's conduct is found in subsection (b)(3)(F). Vicky argues that the limitation should thus apply only to the catchall provision of § 2259(b)(3)(F).

Courts have struggled with articulating a precise standard of proximate cause in the restitution context under § 2259. Although this court has not specified the nature of the proximate cause requirement in § 2259, several other circuits have determined that the government must show the victim's losses were proximately caused by the particular defendant in question and that a showing of causation more generally is insufficient. In deciding "whether a victim's loss attributable to a defendant under the restitution statute is limited to losses proximately caused by the defendant," the Fourth Circuit recently held "that nothing in the text or structure of the restitution statute affirmatively indicates that Congress intended to negate the ordinary requirement of proximate causation for an award of compensatory damages." United States v. Burgess, 684 F.3d 445, 456-57 (4th Cir. 2012). "Rather, the statute's language, which defines a victim as one 'harmed as a result of a commission' of a defendant's acts, invokes the well-recognized principle that a defendant is liable only for harm that he proximately caused." Id. at 457.

Similarly, the Eleventh Circuit held that "for proximate cause to exist, there must be a causal connection between the actions of the end-user and the harm suffered by the victim . . . any other result would undermine the express wording of § 2259." United States v. McGarity, 669 F.3d 1218, 1269 (11th Cir. 2012). A contrary reading, the Eleventh Circuit notes, "would turn restitution for possession of child pornography into strict liability." Id. In the McGarity case, the court determined that the witnesses who

testified at the restitution hearing did not identify "actual harm caused by" the defendant, but rather focused merely on general harm suffered by victims of sexual abuse, and thus vacated the restitution award so that the district court could determine whether the particular defendant proximately caused the victim harm. Id. at 1269-70.

Of the other circuits to have ruled on this issue, all but one have held that § 2259 requires proximate cause, reading "suffered by the victim as a proximate result of the offense" in § 2259(b)(3)(F) to apply to all types of loss enumerated in § 2259(b)(3)(A)-(E). See United States v. Gamble, No. 11-5394, 2013 WL 692512 at *5 (6th Cir. Feb. 27, 2013) (to be published in F.3d) (applying the Sixth Circuit's previous holding that "a proximate cause showing is necessary for restitution awards under § 2259"); United States v. Laraneta, 700 F.3d 983, 990 (7th Cir. 2012) ("[T]here is no reason that any limitation on liability imposed in the name of 'proximate cause' should not apply equally to the specified and the unspecified losses."); Amy & Vicky v. United States (In re Amy & Vicky), 698 F.3d 1151, 1152 (9th Cir. 2012) (upholding the Ninth Circuit's previous ruling that "§ 2259 incorporates a requirement of proximate causation based in part on the proximate result language in 18 U.S.C. § 2259(b)(3)(F)" and concluding that "a court must identify a causal connection between the defendant's offense conduct and the victim's specific losses" before awarding restitution under § 2259 (quotations omitted)); United States v. Aumais, 656 F.3d 147, 153 (2nd Cir. 2011) ("We agree with the majority of circuits and hold that under § 2259, a victim's losses must be proximately caused by the defendant's offense."); United States v. Monzel, 641 F.3d 528, 535-36 (D.C. Cir.

-29-

2011) (relying on the "bedrock rule of both tort and criminal law that a defendant is only liable for harms he proximately caused" and concluding that "nothing in the text or structure of § 2259 leads us to conclude that Congress intended to negate the ordinary requirement of proximate cause" (footnote omitted)); United States v. Crandon, 173 F.3d 122, 125-26 (3d Cir. 1999) (determining whether defendant engaged in "conduct [that] was the proximate cause of the victim's losses" and was thus liable for restitution under § 2259).

Only one circuit has agreed with Vicky's position. On rehearing en banc, the Fifth Circuit recently held "that § 2259 only imposes a proximate result requirement in § 2259(b)(3)(F); it does not require the Government to show proximate cause to trigger a defendant's restitution obligations for the categories of losses in § 2259(b)(3)(A)-(E)." United States v. Wright (In re Amy Unknown), 701 F.3d 749, 752 (5th Cir. 2012) (en banc). The court relied on the rule of the last antecedent, i.e., a limiting phrase following the last term of a series "should ordinarily be read as modifying only the noun or phrase it immediately follows." Barnhart v. Thomas, 540 U.S. 20, 26 (2003). Applying this rule, the Fifth Circuit reads § 2259(b)(3) to "limit the phrase 'suffered by the victim as a proximate result of the offense' in § 2259(b)(3)(F) to the miscellaneous 'other losses' contained in that subsection." Wright, 701 F.3d at 762.

Although we acknowledge the Fifth Circuit's statutory interpretation of the restitution statute, we are persuaded by the majority of our sibling circuits. We hold that in determining the scope of restitution to be awarded to a child pornography victim,

§ 2259 requires a showing that the victim's losses are proximately caused by the defendant's offense. Some circuits have relied on the "series-qualifier" canon to conclude that the proximate cause requirement applies to each of the subsections included in § 2259(b)(3). See e.g., Crandon, 173 F.3d at 125 (the restitution statute "requires awarding the full amount of the victim's losses suffered as a proximate result of the offense," and relying on 18 U.S.C. § 2259(b)(3)); United States v. McDaniel, 631 F.3d 1204, 1209 (11th Cir. 2011) (quoting Porto Rico Ry., Light & Power Co. v. Mor, 253 U.S. 345, 348 (1920), for the proposition that "[w]hen several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all"). Because the modifier "proximate cause" appears at the end of the series in § 2259(b)(3), either canon of statutory interpretation could apply. See Laraneta, 700 F.3d at 989.

Despite the plausible applicability of these contradictory canons, we presume Congress "to have legislated against the background of our traditional legal concepts, and absent language signaling a departure, those concepts ought to be employed." Burgess, 684 F.3d at 457 (quotation omitted); see also Monzel, 641 F.3d at 536 ("[W]e will presume that a restitution statute incorporates the traditional requirement of proximate cause unless there is good reason to think Congress intended the requirement not to apply."). Because proximate cause is such a widely accepted principle, we will not conclude that Congress intended to abrogate it in drafting § 2259 without good reason. See Hemi Group, LLC v. City of New York, 130 S. Ct. 983, 989 (2010) (noting the

-31-

"common-law foundations" of proximate cause).

Our interpretation is supported by § 2259(b)(2), which cross-references portions of the Victim and Witness Protection Act of 1982, 18 U.S.C. § 3664, and the Mandatory Victims Restitution Act of 1996, 18 U.S.C. § 3663A. Both of those acts define "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." §§ 3663(a)(2), 3663A(a)(2). As noted in Burgess, "to the extent that Congress has addressed the matter of causation in [§ 2259], Congress has suggested that proximate causation is a feature of the legislation." 684 F.3d at 457. A Senate committee report on the bill that set forth the language of § 2259 contained the following: "Mandatory restitution: This section requires sex offenders to pay costs incurred by victims as a proximate result of a sex crime." Id. (quoting S. Rep. No. 103-138, at 56 (1993)); see also United States v. Kearney, 672 F.3d 81, 96 n.11 (1st Cir. 2012) (same).

Vicky argues that requiring proximate causation under § 2259 would circumvent the statutory mandate that a defendant pay the victim "the full amount of the victim's losses." 18 U.S.C. § 2259(b)(1)-(2). But this argument is circular; its validity depends upon our acceptance of the argument that "the full amount of the victim's losses" includes losses that were not the proximate result of the defendant's conduct. Because we agree with the majority of courts that Congress did not intend to create a system of strict liability under § 2259, see McGarity, 669 F.3d at 1269, we reject Vicky's proffered interpretation.

-32-

**B**

The district court awarded Vicky restitution of $11,466. The evidence presented at Benoit's sentencing hearing suggests that Vicky has suffered various losses based on her knowledge that individuals receive and possess visual depictions of her exploitation. However, the evidence that Benoit was specifically responsible for any of these losses was relatively thin.

In United States v. Kennedy, 643 F.3d 1251 (9th Cir. 2011), the Ninth Circuit held that the defendant's participation in the audience of persons who viewed the images of the victim was insufficient to show proximate cause. Id. at 1264-65. As that court explained:

> Rather than proving a causal relationship between Kennedy's actions and the victims' losses, the government's evidence showed only that Kennedy participated in the audience of persons who viewed the images of Amy and Vicky. While this may be sufficient to establish that Kennedy's actions were one cause of the generalized harm Amy and Vicky suffered due to the circulation of their images on the internet, it is not sufficient to show that they were a proximate cause of any particular losses.
> . . .
> In short, the government here did not prove the existence of any causal connection between Kennedy's offense and Amy and Vicky's specific losses, let alone prove that Kennedy's offense was a "material and proximate cause" of those losses. Because the government failed to establish that the victims' losses were proximately caused by Kennedy's offense, it did not meet the second requirement of a restitution award under § 2259.

Id. at 1263-64. Several other circuits have reached similar conclusions regarding the specificity required to reach a proximate cause determination. See Laraneta, 700 F.3d at 991-93 (remanding for a redetermination of the portion of damages to the victim

-33-

allocable to the defendant); Burgess, 684 F.3d at 460 ("The primary difficulty that will face the district court on remand will be the determination, if the court finds that proximate causation has been established, of the quantum of loss attributable to Burgess for his participation in Vicky's exploitation."); Kearney, 672 F.3d at 99-100 (determining proximate cause was satisfied because defendant's actions resulted in identifiable losses as outlined in the expert reports and Vicky's victim impact statements); Aumais, 656 F.3d at 154-55 (concluding proximate cause was lacking because victim had no direct contact with defendant or knew of defendant's existence and no evidence linked defendant's possession to loss suffered by victim); Monzel, 641 F.3d at 539 ("Because the record does not show that Monzel proximately caused all of Amy's injuries, the district court did not clearly and indisputably err by declining to impose joint and several liability on him for the full $3,263,758 she seeks."); McDaniel, 631 F.3d at 1209 (specific notifications from the National Center for Missing and Exploited Children alleged by victim add to the "slow acid drip of trauma" suffered by victim and thus satisfied proximate cause requirement).

Considering this weight of authority, we cannot affirm the district court's restitution award. The total restitution amount was reached by adding together two totals. First, the court awarded $5,950 for attorney fees based on a conservative estimate of hours devoted to this case multiplied by an hourly rate. We have no issue with this portion of the award. Second, the district court apparently divided the total loss claimed by Vicky, $1,224,694.04, by 222, the number of restitution judgments Vicky had

-34-

received at the time of the hearing. This implicit calculation does not meet the proximate cause standard we have announced on the record before us.[8] Despite our sympathy for Vicky, "show[ing] only that [defendant] participated in the audience of persons who viewed the images of [the victim] . . . may be sufficient to establish that [defendant's] actions were one cause of the generalized harm [victims] suffered due to the circulation of their images on the internet, [but] it is not sufficient to show that they were a proximate cause of any particular losses." Kennedy, 643 F.3d at 1264.

Because the district court is better suited to calculate damages under the proper standard than this court, we remand for a redetermination of the portion of damages allocable to Benoit, if any.

## V

Benoit also appeals the district court's denial of various and sundry motions and sentencing requests. We discern no merit in any of these claims.

## A

---

[8] In certain situations dividing a victim's total damages by the number of end-viewers of child pornography may be sufficient to satisfy a proximate cause standard. For instance, a district court may determine that the pool of a victim's provable losses are roughly equally caused by multiple defendants. However, in this case the district court did not make factual findings as to whether the number of judgments was approximately equal to the number of end-users or whether Benoit caused approximately the same amount of damages as other end-users. See Gamble, 2013 WL 692512, at *11 (accepting the government's proposed method of calculating restitution where "[t]he district court first determines the pool of a victim's provable losses that are not traceable to a single defendant using the proximate cause standard described in this opinion . . . . Second, the district court determines how much of the pool a given defendant caused").

Benoit contends that the district court erred in refusing to dismiss his case based on the government's alleged failure to meet the jurisdictional nexus requirement of 18 U.S.C. § 2252. We review the sufficiency of an indictment de novo. United States v. Todd, 446 F.3d 1062, 1067 (10th Cir. 2006).

Benoit offers a cursory argument that because both his computer and his internet service provider are located in Oklahoma, there can be no interstate commerce nexus. As Benoit concedes, however, this argument has recently been specifically rejected by this court. See United States v. Sturm, 672 F.3d 891, 892 (10th Cir. 2012) (en banc) ("[T]he Government may satisfy the jurisdictional element of [§ 2252] if it presents evidence that the substantive content of the images has, at some point, traveled in interstate or foreign commerce."). The indictment adequately alleged an interstate commerce nexus under this standard.

**B**

We review the denial of a motion for a new trial for abuse of discretion. United States v. Poole, 545 F.3d 916, 918 (10th Cir. 2008). We consider Benoit's appeal of the "denial of [his] motion for judgment of acquittal de novo, viewing the evidence in the light most favorable to the government in determining if there is substantial evidence from which a jury could find the defendant guilty beyond a reasonable doubt." United States v. Austin, 231 F.3d 1278, 1283 (10th Cir. 2000) (citation omitted).

Benoit claims he did not receive a fair trial "for various reasons," including lack of proper jury instructions, insufficient evidence of an interstate commerce nexus, double

jeopardy, his claim that the receipt count requires an intent to distribute, the use of an unqualified expert, the denials of his motions to dismiss and suppress, and his requested lesser-included offense argument. For the most part, Benoit simply repeats the issues he previously raised. We have already considered and ordered relief if appropriate as to the substance of Benoit's claim that receipt requires an intent to distribute, his double jeopardy and lesser included offense issues, and the denial of his motions to dismiss and to suppress.

We reject Benoit's claim that the evidence was insufficient to satisfy the interstate commerce element of each count because the government clearly proved "that the substantive content of the images ha[d], at some point, traveled in interstate or foreign commerce." Sturm, 672 F.3d at 892.

We conclude that Benoit has waived the remaining issues for failure to advance reasoned argument. Although he notes these issues in his opening brief, Benoit fails to develop any argument suggesting the district court erred. See United States v. Cooper, 654 F.3d 1104, 1128 (10th Cir. 2011) ("It is well-settled that arguments inadequately briefed in the opening brief are waived." (quotations omitted)).

## C

Lastly, Benoit contends the district court erred in refusing to reduce his offense level for acceptance of responsibility. We review a district court's decision to refuse application of the two-level reduction for acceptance of responsibility for clear error. McGehee, 672 F.3d at 877. Benoit bore the burden to "prove by a preponderance of the

evidence that he is entitled" to the acceptance of responsibility adjustment. United States

v. Portillo-Valenzuela, 20 F.3d 393, 394 (10th Cir. 1994). "The sentencing judge is in a

unique position to evaluate a defendant's acceptance of responsibility. For this reason,

the determination of the sentencing judge is entitled to great deference on review."

U.S.S.G. § 3E1.1, cmt. n.5.

A defendant may receive a two-level reduction if he "clearly demonstrates

acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). The commentary

explains that acceptance of responsibility includes admitting the conduct underlying the

conviction, voluntary payment of restitution, voluntary surrender to authorities, assistance

to authorities, and rehabilitative efforts. § 3E1.1 cmt. n.1. However, the adjustment

> is not intended to apply to a defendant who puts the government to its
> burden of proof at trial by denying the essential factual elements of guilt, is
> convicted, and only then admits guilt and expresses remorse. Conviction
> by trial, however, does not automatically preclude a defendant from
> consideration for such a reduction. In rare situations a defendant may
> clearly demonstrate an acceptance of responsibility for his criminal conduct
> even though he exercises his constitutional right to a trial. This may occur,
> for example, where a defendant goes to trial to assert and preserve issues
> that do not relate to factual guilt (e.g., to make a constitutional challenge to
> a statute or a challenge to the applicability of a statute to his conduct).

§ 3E1.1 cmt. n.2 (emphasis added). Pleading "not guilty and requiring the government to

prove guilt at trial demonstrate denial of responsibility, regardless of how easily the

government can prove guilt." Portillo-Valenzuela, 20 F.3d at 394-95.

Benoit claims that the district court erred in denying him credit for acceptance of

responsibility because he went to trial only to test legal theories and did not deny that he

-38-

possessed the child pornography. However, "the question is not whether [defendant] actively asserted his innocence, but whether he clearly demonstrated acceptance of his guilt." Id. at 394 (quotation omitted). The district court explained that Benoit "contested many aspect[s] of the government's case and did not agree or stipulate to evidence before or during the trial." As a result, the government was forced to "present hundreds of graphic child pornography images and videos. Further, the government was required to call witnesses that resulted in a substantial cost for related expenses." Although Benoit admitted he possessed child pornography to law enforcement, he nevertheless "put[] the government to its burden of proof at trial." U.S.S.G. § 3E1.1 cmt. n.2.

We conclude that the district court did not clearly err in denying the acceptance of responsibility adjustment under these circumstances. See Portillo-Valenzuela, 20 F.3d at 394-95 (affirming denial of reduction because defendant put the government to its burden despite confessing to law enforcement prior to trial); see also United States v. Garcia, 987 F.2d 1459, 1461-62 (10th Cir. 1993) (same). Benoit's admission of guilt to the police prior to trial, when considered against the totality of Benoit's actions during trial, does not compel a finding that he clearly demonstrated acceptance of responsibility.

Benoit urges us to rely on two cases in which we affirmed an acceptance of responsibility adjustment to defendants who pled not guilty. See United States v. Garcia, 182 F.3d 1165, 1171-75 (10th Cir. 1999); United States v. Gauvin, 173 F.3d 798, 805-06 (10th Cir. 1999). We reject his reliance on these cases for two reasons. In both cases the defendants unambiguously admitted to having engaged in the charged conduct. See

Garcia, 182 F.3d at 1174 n.2 ("Garcia has at all times admitted what he did in this case."); Gauvin, 173 F.3d at 806 (defendant "admitted to all the conduct with which he was charged"). Such is not the case here. During his opening statement to the jury, Benoit's attorney explicitly stated that all elements of each count "have to be proven by the government beyond a reasonable doubt . . . there are elements that we don't believe are present." Moreover, as the district court noted, Benoit contested many aspects of the government's case and refused to stipulate to evidence before trial. See also United States v. Ellis, 525 F.3d 960, 964 (10th Cir. 2008) (putting the government to proof at trial and cross-examining witnesses on factual matters, among other actions, may demonstrate a lack of acceptance of responsibility).

In addition, in both Garcia and Gauvin the district court granted an adjustment, and this court gave due deference to its determination. See Garcia, 182 F.3d at 1171; Gauvin, 173 F.3d at 806. We must give the district court similar deference in reviewing its decision to deny the reduction to Benoit. See McGehee, 672 F.3d at 877 ("[I]n Gauvin, we merely accorded the district court the requisite deference in upholding its decision to grant the two-level reduction. We did not indicate that other sentencing courts would be obliged to reach the same conclusion on similar facts." (citation omitted)). Given the high deference we must pay to the district court's denial of acceptance of responsibility points at Benoit's sentencing, we conclude the district court did not err in denying Benoit a reduction. Benoit's assertions that he only went to trial to "preserve legal issues" and only contended that he was "legally innocent" do not

persuade us.

## III

For the foregoing reasons, we **AFFIRM** in part, **REVERSE** in part, and **REMAND** for further proceedings.[9] On remand, the district court must vacate one of Benoit's convictions and the related sentence, and consider under the proximate cause standard discussed above whether Benoit's offense caused Vicky's losses.

---

[9] Appellee's motion to strike amicus briefs and participation at oral argument is **DENIED**.