**PUBLISH**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 24, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

STORMY BOB GRIFFITH,

     Defendant - Appellant.

Nos. 17-1365 & 18-1054

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:16-CR-00329-MSK-GPG-1)**
_____

Submitted on the briefs:[*]

Mark D. Standridge, Jarmie & Associates, Las Cruces, New Mexico, and Mark D. Jarmie, Jarmie & Associates, Albuquerque, New Mexico, for Defendant-Appellant, in No. 17-1365.

Stormy Bob Griffith, Pro Se Appellant, in No. 18-1054.

Jason R. Dunn, United States Attorney, and James C. Murphy, Assistant United States Attorney, Denver, Colorado, for Plaintiff-Appellee.
_____

Before **McHUGH**, **BALDOCK**, and **KELLY**, Circuit Judges.
_____

---

     [*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

**McHUGH**, Circuit Judge.

_____

### APPEAL NO. 17-1365

In appeal No. 17-1365, defendant-appellant Stormy Bob Griffith timely filed a counseled notice of appeal challenging his conviction and sentence.  He was subsequently appointed different counsel, who has since moved to withdraw from the case under *Anders v. California*, 386 U.S. 738 (1967), asserting there are no non-frivolous grounds for appeal.  Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and finding no grounds for appeal that are not "wholly frivolous," *Anders*, 386 U.S. at 744, we grant counsel's motion to withdraw and dismiss the appeal.

## I.    *ANDERS* PROCEDURE

To obtain leave to withdraw under *Anders* in a direct criminal appeal "where counsel conscientiously examines a case and determines that any appeal would be wholly frivolous," counsel for the defendant must "submit a brief to the client and the appellate court indicating any potential appealable issues based on the record." *United States v. Calderon*, 428 F.3d 928, 930 (10th Cir. 2005); *see also* 10th Cir. R. 46.4(B)(1).  "The client may then choose to submit arguments to the court.  The Court must then conduct a full examination of the record to determine whether defendant's claims are wholly frivolous." *Calderon*, 428 F.3d at 930 (citation omitted).

Defense counsel served the *Anders* brief on Mr. Griffith. At this court's direction, the government filed an answer brief. Mr. Griffith filed numerous pro se responses and supplemental responses.[1] If, after examining the briefs, the responses, and the record, the court concludes "that the appeal is frivolous, it may grant counsel's motion to withdraw and may dismiss the appeal." *Calderon*, 428 F.3d at 930. Accordingly, we must review defense counsel's brief, the government's brief, Mr. Griffith's responses, and the record to determine whether Mr. Griffith has raised any nonfrivolous grounds for appeal and whether to grant defense counsel's request to withdraw.

## II. BACKGROUND

Mr. Griffith and his then-wife lived on acreage near Cedaredge, Colorado, where they grew marijuana plants. Ms. Griffith testified that Mr. Griffith created the marijuana field with help from seven other individuals and that the plants were taken care of by Mr. Griffith, Ms. Griffith, and others. Mr. Griffith paid for some of the labor with marijuana. Ms. Griffith stated that both she and Mr. Griffith held prescriptions for medical marijuana, which allowed each of them to have 99 marijuana plants, although Ms. Griffith stated that Mr. Griffith used her 99 plants. She further stated that another person had a prescription for 48 plants.

---

[1] We liberally construe Mr. Griffith's pro se filings, but we do not act as his advocate. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). Moreover, "pro se parties [must] follow the same rules of procedure that govern other litigants." *Id.* (internal quotation marks omitted).

On September 27, 2016, and again on October 2, 2016, law-enforcement officials were called to Mr. Griffith's property about shots being fired. Both times officers observed Mr. Griffith carrying a weapon. Mr. Griffith told the responding officers that he was shooting in self-defense or for target practice. On October 4, 2016, authorities executed a search warrant on Mr. Griffith's property, where they found 478 marijuana plants and 92 kilograms of processed marijuana, as well as 28 firearms and ammunition.

A grand jury returned an indictment charging Mr. Griffith with (1) knowingly and intentionally conspiring to distribute, and possessing with the intent to distribute, 50 kilograms or more of a mixture and substance containing a detectable amount of marijuana and 50 or more marijuana plants, a schedule I controlled substance, under 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and 846; (2) knowingly and intentionally possessing with the intent to distribute 50 kilograms or more of a mixture and substance containing a detectable amount of marijuana and 50 or more marijuana plants, a schedule I controlled substance, under 21 U.S.C. §841(a)(1), (b)(1)(C); and (3) having been previously convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly possessing a firearm and ammunition in and affecting interstate commerce, under 18 U.S.C. § 922(g)(1). On May 17, 2017, a jury convicted him on all counts, and on October 10, 2017, the district court sentenced him to 97 months in prison, followed by three years of supervised release.

Mr. Griffith challenges his convictions and sentence. He also challenges the use of federal funds to incarcerate him, but we do not address this claim because it does not relate to his conviction and sentence.

### III.   SUBJECT-MATTER JURISDICTION

Mr. Griffith contends that the United States lacked jurisdiction to prosecute him. Much of his argument is unintelligible. From what we can discern, he contends (1) the federal Commerce Clause does not confer jurisdiction to prosecute criminal violations; (2) the Tenth Amendment prohibits the federal government from enacting and enforcing criminal laws; (3) he is a "living Flesh and Blood man," Def. Resp. to *Anders* Br. at 2 (Aug. 8, 2018); (4) the federal government does not have common-law jurisdiction to prosecute crimes; (5) Congress improperly gave power to a corporation known as the United States of America, whose "special laws—US code etc., are private to the foreign corporation (USA), have no authority over the several Union States of the Republic and/or State Zoned Citizen(s)," *id.* at 6-7; and (6) "to establish Article III original jurisdiction and standing, a contract must be introduced into the record when the complaint was filed on October 19, 2016," *id.* at 9.

We review a challenge to subject-matter jurisdiction de novo. *Niemi v. Lasshofer*, 770 F.3d 1331, 1344 (10th Cir. 2014). We first reject the challenge based on the Commerce Clause. The federal statutes under which Mr. Griffith was convicted have specifically passed constitutional scrutiny under the Commerce Clause. *See United States v. Dorris*, 236 F.3d 582, 584–86 (10th Cir. 2000) (18 U.S.C. § 922(g)(1) valid exercise of Commerce Clause power); *United States v.*

5

*Wacker*, 72 F.3d 1453, 1475 (10th Cir. 1995) (21 U.S.C. §§ 841(a)(1) and 846 valid exercise of Commerce Clause power).

The other relevant statutes are not statutes of conviction; rather, they are penalty statutes. *See* 18 U.S.C. § 924(a)(2) ("Whoever knowingly violates [18 U.S.C. § 922(g)] shall be fined as provided in this title, imprisoned not more than 10 years, or both."); 21 U.S.C. § 841(b)(1)(C) (setting out penalties for violations of § 841(a)). *Cf. United States v. Phelps*, 17 F.3d 1334, 1338 (10th Cir. 1994) ("[A] penalty enhancement statute . . . does not create a new substantive federal crime."). Neither of these penalty statutes supports Mr. Griffith's constitutional challenge to the federal government's power to prosecute him.

We reject Mr. Griffith's remaining challenges to jurisdiction as frivolous. *See* 18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.").

## IV. COMPLIANCE WITH COLORADO STATE MARIJUANA LAWS

Colorado law permits the use of marijuana for medical and recreational purposes, and prescribes conditions for such use. Colo. Const. Art. XVIII, §§ 14, 16. In addition, Colorado law authorizes the operation of marijuana-related facilities, *see id.* § 16(4), but requires marijuana plants to be grown in an enclosed and locked space, not in an open field, Colo. Rev. Stat. §§ 18-18-406(3)(a), (b)(1) (2016).

Mr. Griffith claimed that he was in compliance with Colorado state marijuana laws and moved to dismiss the indictment because the federal prosecution was not

6

authorized. The district court denied the motion because there was a question of fact whether Mr. Griffith was in compliance with Colorado law. Mr. Griffith relied on his contention that he was in compliance to advance several challenges to the indictment and he continues to rely on it to challenge his convictions and sentence, as discussed herein.[2]

## A. Pretrial Motion to Dismiss

Mr. Griffith filed a pre-trial motion to dismiss the indictment on the grounds of selective prosecution and enforcement of marijuana laws. The district court denied the motion. We review de novo Mr. Griffith's challenge to this ruling. *See United States v. Barrett*, 496 F.3d 1079, 1117 (10th Cir. 2007) (reviewing timely pretrial motion to dismiss de novo).

Although Mr. Griffith's motion to dismiss purported to rely only on legal grounds, it in fact sought "to vindicate an affirmative defense bearing directly on his guilt or innocence, [by] arguing that he [could not] be guilty of the charged offense" under Colorado's marijuana laws. *United States v. Pope*, 613 F.3d 1255, 1261 (10th Cir. 2010). The motion did not attempt to demonstrate that Mr. Griffith was in compliance with Colorado law, and the government argued, among other things, that he was not. Thus, the motion required the district court to address issues of fact relative to the alleged offenses, which a court may not consider before trial. *See id.*

---

[2] Mr. Griffith requests this court to take judicial notice that the state marijuana charges against him were dismissed. The state court's decision to dismiss the charges—in one case because the main investigatory witness was unavailable—is not binding on this court.

(stating a district court may not consider before trial defendant's argument for dismissal based on "the facts surrounding the commission of the alleged offense" (internal quotation marks omitted)). In addition, the motion to dismiss did "not rest on a pure question of law, the facts charged in the indictment itself, or agreed extra-indictment facts," so a trial was required. *Id.* Therefore, the district court did not err in denying the pretrial motion to dismiss.

## B. Selective Enforcement and Prosecution

The defense filed a motion to dismiss in the district court based on selective enforcement and prosecution. Defense counsel discussed selective prosecution in the *Anders* brief. On appeal, Mr. Griffith maintains that the government selectively enforced the marijuana laws and selectively prosecuted him. For both claims, he asserts that the others involved in growing the marijuana on his property were not arrested or prosecuted.[3]

To proceed with a selective-prosecution claim, "[t]he claimant must demonstrate that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose." *United States v. Armstrong*, 517 U.S. 456, 465 (1996) (internal quotation marks omitted). A selective-enforcement claim requires essentially the same showing. *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1264 (10th Cir. 2006). This standard is a "demanding one." *Armstrong*,

---

[3] Ms. Griffith testified that she was charged in state court with several crimes related to the marijuana operation, and she decided to cooperate with federal authorities in exchange for an immunity agreement. R. Vol. 3, at 360.

8

517 U.S. at 463. "[T]he decision whether to prosecute may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification." *Id.* at 464 (internal quotation marks omitted).

Mr. Griffith has failed to identify any "unjustifiable standard," such as race or religion, or any "arbitrary classification" involved in the decision to prosecute him. He simply asserts that others who also grew and distributed marijuana were not prosecuted. This is insufficient to show selective enforcement or prosecution.

### C. Proffered Jury Instruction - Mistake of Law

Mr. Griffith proffered a jury instruction stating that (1) his conduct was legally authorized if he had acted under a mistaken belief that his conduct was not illegal, and (2) his conduct was permitted by an official written interpretation of the law issued by a public entity empowered to interpret the applicable law. R. Vol. 1, at 147. Mr. Griffith relied on two memoranda issued by James M. Cole, Deputy Attorney General, on August 29, 2013, *id.* at 66-69, and February 14, 2014, *id.* at 70-72 (collectively, Cole Memo).[4] The Cole Memo recognized that some states have legalized marijuana use and identified law-enforcement priorities, such as preventing sale to minors. *Id.* at 66. In addition to the Cole Memo, Mr. Griffith invoked Section 538 of the Consolidated and Continuing Further Appropriations Act of 2015, Pub. L. 113-235, § 538, 128 Stat. 2130 (2014) (stating funds made available through the Act

---

[4] The Cole Memo was subsequently rescinded on January 4, 2018. *See* https://www.justice.gov/opa/press-release/file/1022196/download (last visited May 21, 2019).

9

were not to be used to prevent states from implementing their own laws concerning marijuana).

In arguing for the proffered instruction, defense counsel characterized the theory in the proposed instruction as a hybrid mistake-of-law defense and advice-of-counsel defense. R. Vol. 3, at 454, 455. Defense counsel informed the district court that an attorney had advised Mr. Griffith "that pursuant to the Cole Memo, as long as he maintained legality under Colorado state law . . . he would be free from prosecution from the federal government." *Id.* at 453. But as the district court pointed out, the Cole Memo itself said it was "[s]olely a guide to the exercise of investigative and prosecutorial discretion. It does not alter in any way the Department [of Justice]'s authority to enforce federal law, and it does not provide a legal defense to a violation of federal law." *Id.* at 456 (internal quotation marks omitted). Therefore, the district court indicated that the proffered instruction would not be given. The next morning, after consulting with Mr. Griffith, defense counsel withdrew the proposed instruction, because he and Mr. Griffith had decided that Mr. Griffith would not testify at trial.[5]

In the *Anders* Brief, counsel discussed the district court's decision not to give his proffered instruction, stating that the Cole Memo precluded criminal prosecution

---

[5] Mr. Griffith's decision not to testify was also based on the district court's refusal to give his tendered instruction on self-defense, as discussed below.

as long as Mr. Griffith was in compliance with Colorado's marijuana laws.[6] "We review the district court's refusal to issue a requested theory-of-defense instruction for an abuse of discretion. A defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *United States v. Harris*, 695 F.3d 1125, 1136 (10th Cir. 2012) (brackets, citation, and internal quotation marks omitted).

We conclude that the district court was within its discretion to refuse the proffered instruction. Mr. Griffith has not demonstrated that he was in compliance with Colorado's marijuana laws. Even if Mr. Griffith and his wife had medical recommendations for 99 plants each and another person had one for 48 plants, and even accounting for plants grown for recreational use by the nine individuals Ms. Griffith identified, the total is far less than the 478 plants found on his property. *See* Colo. Const. art. 18, § 16(3)(a) & (b) (allowing for possession of one ounce of marijuana and six marijuana plants for recreational use); Colo. Rev. Stat. § 25-1.5-106(8.5)(b) ("A patient shall not cultivate more than ninety-nine plants" for medical use.) Furthermore, the plants were growing in an open field, contrary to Colorado's requirement that marijuana plants be grown in an enclosed and locked space. *See* Colo. Stat. § 18-18-406(3)(a), (b)(1) (2016).

---

[6] Mr. Griffith briefly mentions an "Ogden Memo," Def. Suppl. Resp. to *Anders* Br. at 3 (Nov. 20, 2018), which he contends is similar to the Cole Memo.

We hold that the district court did not abuse its discretion in refusing the proffered jury instruction. Mr. Griffith's bare assertion that § 18-18-406 is unconstitutional is insufficient.

## V. PROFFERED JURY INSTRUCTION – SELF-DEFENSE OR DEFENSE OF JUSTIFICATION

Mr. Griffith requested a jury instruction on self-defense or defense of another, concerning the charge of possession of a firearm by a felon. R. Vol. 1, at 146. Defense counsel informed the district court that Mr. Griffith intended to testify that "the reason he was carrying a weapon on October 2 was due to the fact that five days earlier [on September 27, 2016], he and his family had been fired at" and "he feared for his life." *Id.* Vol. 3, at 430. Counsel's proffer was that Mr. Griffith remained afraid for his family's safety, and he and his family lived in a remote area where law-enforcement response was not immediate.

The district court observed that this defense was not self-defense, but the defense of justification. The court then denied an instruction based on these circumstances because Mr. Griffith did not meet his burden to show (1) there was an imminent threat of death or serious bodily injury, (2) he did not recklessly or negligently place himself in a situation where it was probable that he would have been forced to use a firearm, (3) he had no reasonable legal alternative to using or possessing a firearm, (4) he possessed the firearm to avoid the harm, and (5) he abandoned the firearm at the earliest possible opportunity after the threat had passed. *Id.* at 449-50. Mr. Griffith does not contend that his evidence meets these criteria.

12

*See United States v. Nevels*, 490 F.3d 800, 805 n.3 (10th Cir. 2007) (listing elements defendant must establish by a preponderance to warrant giving a justification defense). Therefore, we conclude that the district court did not abuse its discretion in denying the requested instruction.

## VI.    CONSPIRACY – SUFFICIENCY OF THE EVIDENCE

Mr. Griffith contends that the evidence was insufficient to sustain his conviction for conspiracy to distribute and possess with intent to distribute marijuana. The district court denied the defense motion for judgment of acquittal on this ground made at the close of evidence. We review the sufficiency of the evidence de novo, "considering the evidence in the light most favorable to the government to determine whether any rational jury could have found guilt beyond a reasonable doubt." *United States v. Pickel*, 863 F.3d 1240, 1251 (10th Cir. 2017) (internal quotation marks omitted). In conducting our review, "we consider all of the evidence, direct and circumstantial, along with reasonable inferences, but we do not weigh the evidence or consider the relative credibility of witnesses." *Id.* (brackets and internal quotation marks omitted). Consequently, "our review of the evidence is highly deferential[, and] we may reverse only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. (brackets, citation, and internal quotation marks omitted).

The elements of a conspiracy are: "(1) two or more persons agreed to violate the law, (2) [the defendant] knew the essential objectives of the conspiracy, (3) [the

13

defendant] knowingly and voluntarily participated in the conspiracy, and (4) the alleged co-conspirators were interdependent." *Id.* (internal quotation marks omitted).

Mr. Griffith contends that the first element of a conspiracy was not proved because he relied on the advice of an attorney that if he complied with Colorado law, he would not be federally prosecuted. Thus, he argues, there was no agreement to violate the law. As discussed above, however, the evidence indicated that Mr. Griffith was not in compliance with Colorado law. And because he decided not to testify, this theory was not presented to the jury.

The evidence of a conspiracy was provided by Stacy Griffith, who was then Mr. Griffith's wife. She testified that Mr. Griffith created the marijuana field with help from seven other individuals, and that the plants were taken care of by herself, Mr. Griffith and four other named individuals. Mr. Griffith paid for some of the labor with marijuana, thus indicating that others had made an agreement to assist Mr. Griffith to produce marijuana.

Ms. Griffith testified that Mr. Griffith's income was the sole income for the household and that he did not have work other than growing and processing marijuana and advising others how to grow marijuana. She further testified that Mr. Griffith kept information about his income from her—telling her the less she knew, the better off she was—thereby indicating that he knew his marijuana dealings were illegal. Ms. Griffith described the incident during the night of September 27, 2016, where Mr. Griffith and two of the others involved in the marijuana operation,

14

believing someone was in the marijuana field, went outside together, guns blazing, permitting the inference that they all went to defend their marijuana.

Mr. Griffith argues that the only evidence of an agreement was circumstantial. But "conspiracy convictions may be based on circumstantial evidence, and the jury may infer conspiracy from the defendant['s] conduct and other circumstantial evidence indicating coordination and concert of action." *United States v. Wardell*, 591 F.3d 1279, 1287 (10th Cir. 2009) (internal quotation marks omitted); *accord United States v. Brooks*, 736 F.3d 921, 938 (10th Cir. 2013) (holding "circumstantial evidence is . . . sufficient to prove the existence of an agreement" for a conspiracy conviction).

Mr. Griffith next argues that Ms. Griffith herself could not have been part of any conspiracy because she testified that she assisted him only "under duress, (of direct threat of indictment by the Corporate Federal Government)." Def. Resp. to *Anders* Br. at 9 (Aug. 8, 2018). But Ms. Griffith testified, not that she feared federal indictment, but only that if she did not help with the marijuana operation, Mr. Griffith would "get really mad," yell at her, "threaten to leave," and "yell at the kids." R. Vol. 3, at 359. The jury was free to consider this evidence in evaluating the conspiracy charge.

Mr. Griffith also contends that there was no evidence that anyone agreed to violate the law because some of the marijuana on his property was owned by others and "the only distribution of marijuana was that among the members of the cooperative collective." Def. Resp. to Gov't Br. at 4 (Jan. 16, 2019). He maintains

15

that no illegal activity occurred because the members were lawfully entitled to cultivate and possess marijuana for medical and recreational purposes under Colorado law. Even if the record supported these claims, the jury was not required to adopt his characterization of the facts.

Lastly, Mr. Griffith seizes on the district court's remark that "the conspiracy count . . . is troublesome [and] the evidence here is weak." R. Vol. 3, at 415. Even so, the court correctly "construe[d] the evidence most favorably to the Government," and concluded that "a rational juror could find that there was a conspiracy . . . between Mr. Griffith and one or more [others]." *Id.* The court's observation that the evidence was weak does not equate to a finding that the evidence was insufficient, nor does it undermine the jury's verdict. Based on our de novo review, and viewing the evidence in the light most favorable to the government, we conclude that a rational jury could have found Mr. Griffith guilty of conspiracy beyond a reasonable doubt.

## VII. CONSPIRACY-TO-DISTRIBUTE CHARGE

Mr. Griffith contends that "[t]here is no such Charge as Count I of the Indictment," which charged him with conspiracy to distribute and possess with intent to distribute 50 kilograms or more of marijuana and 50 or more marijuana plants. Def. Resp. to *Anders* Br. at 14 (Aug. 8, 2018). He asserts that the statute, 21 U.S.C. § 841(b)(1)(B), requires 100 kilograms or more. He contends this error is plain error. Mr. Griffith was not charged with violating § 841(b)(1)(B), however. Rather, he was charged under 21 U.S.C. §§ 841(a)(1) & (b)(1)(C) and 846, R. Vol. 1, at 17-18,

16

which require at least 50 kilograms.  Thus, Mr. Griffith has identified no error, let alone plain error.

## VIII.  CONVICTION FOR FELON IN POSSESSION OF A FIREARM

Mr. Griffith makes several challenges to his conviction for being a felon in possession of a firearm, under 18 U.S.C. § 922(g)(1).  This conviction was predicated on Mr. Griffith's 1999 Wyoming state felony conviction for distributing a controlled substance to a minor, for which he was sentenced to 8 years in prison.  R. Vol. 2, at 25.  The prison sentence was suspended and he was placed on 8 years' probation; on March 1, 2005, he was discharged from probation.  *Id.*

Mr. Griffith did not present his arguments to the district court, so we review only for plain error.  *See United States v. Dalton*, 918 F.3d 1117, 1129 (10th Cir. 2019).  "Under the plain-error standard of review, the defendant must establish that (1) the district court committed error; (2) the error was plain—that is, it  was obvious under current well-settled law; (3) the error affected the Defendant's substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings."  *Id.* at 1129-30 (internal quotation marks omitted).

Mr. Griffith first invokes the Second Amendment to argue that he had an absolute right to carry a weapon, so his conviction for being a felon in possession of a firearm must be reversed.  In *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008), the Supreme Court reiterated that the Second Amendment does not affect the longstanding prohibition against felons possessing firearms.  *Accord McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) ("We made it clear in *Heller* that our

17

holding did not cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms by felons . . . ." (internal quotation marks omitted)). "Thus, it is evident neither *Heller* nor *McDonald* changes the constitutional status of § 922(g) in its prohibition of firearms by felons." *United States v. Molina*, 484 F. App'x 276, 285 (10th Cir. 2012).[7]

Second, Mr. Griffith claims his civil rights were restored automatically when he completed his sentence for his 1999 Wyoming conviction in 2005, so he was authorized to carry a weapon in 2016. Thus, he maintains that his Wyoming felony conviction was not a qualifying conviction for purposes of 18 U.S.C. § 922(g)(1), which makes it unlawful for any person "who has been convicted in any court, of a crime punishable by imprisonment for a term exceeding one year" to possess a firearm. Excepted from this provision is a conviction for which the person has had his civil rights restored. *Id.* § 921(a)(20).

Mr. Griffith relies on Colorado law regarding restoration of civil rights, but we look to the law of the jurisdiction where he was convicted—Wyoming. *See id.* ("What constitutes a conviction of [a predicate felony] shall be determined in accordance with the law of the jurisdiction in which the proceedings were held."); *accord United States v. Sanders*, 18 F.3d 1488, 1490 (10th Cir. 1994). We consider the Wyoming statute in effect at the time Mr. Griffith was eligible to have his civil

---

[7] Although not precedential, we find the reasoning of this unpublished case to be instructive. *See* 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").

rights restored. *See United States v. Norman*, 129 F.3d 1393, 1397 (10th Cir. 1997).

Under Wyo. Stat. Ann. § 17-13-105(b) (2003), a person convicted of a nonviolent

felony could petition the state board of parole for a certificate that restored the

person's voting rights. The restoration of voting rights is necessary to demonstrate

the restoration of the right to possess firearms. *United States v. Flower*, 29 F.3d 530,

536 (10th Cir. 1994) ("[T]he rights to vote, serve on a jury, and hold public office, as

well as the right to possess firearms, must *all* be restored under § 921(a)(20) before a

prior conviction may be excluded on the basis of restoration of civil rights." (first

emphasis omitted)). Mr. Griffith does not suggest that his civil rights were restored

under Wyoming law or that he applied for the necessary certificate. Therefore, he

has not demonstrated plain error in charging him with being a felon in possession of

a firearm.[8]

Third, Mr. Griffith contends that he was charged with violating 18 U.S.C.

§ 922(g)(1), but the jury instruction was based on 18 U.S.C. § 924(a)(2). Thus, he

asserts that he was convicted of an uncharged crime. Def. Suppl. Resp. to *Anders* Br.

at 9 (Nov. 20, 2018). Mr. Griffith has not cited to any jury instruction to support this

claim, however, and we will not search the record to find support for his argument.

*See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

---

[8] Mr. Griffith suggests that his trial counsel rendered ineffective assistance by not raising this argument to the district court. "Ineffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal. Such claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed." *Calderon*, 428 F.3d at 931 (internal quotation marks omitted). Therefore, we do not address this claim.

Fourth, Mr. Griffith argues that his possession of a firearm was in compliance with Colorado law requiring him to have security measures in place at his marijuana operation. *See* Colo. Rev. Stat. § 18-18-406(3)(a), (b)(1) (2016). Nothing in these provisions authorizes a felon to possess a firearm. We also reject Mr. Griffith's argument that he was permitted to use firearms owned by his wife.

We conclude that Mr. Griffith has failed to demonstrate plain error, so we affirm his conviction under § 922(g)(1) for being a felon in possession of a firearm.

## IX. VINDICTIVE PROSECUTION, SUPPRESSION OF EVIDENCE, AND GRAND JURY PROCEEDINGS

Mr. Griffith argues on appeal that (1) he was vindictively prosecuted; (2) evidence obtained by executing an invalid search warrant should have been suppressed; and (3) there may have been deficiencies in the grand jury proceedings resulting in an invalid indictment.[9] He does not argue that he raised these issues before trial, as required by Rule 12 of the Federal Rules of Criminal Procedure, and the record reflects that he did not. *See* Rule 12(b)(3)(A)(iv) & (v); (C) (stating the following motions, among others, must be made before trial: vindictive prosecution, suppression of evidence, and an error in the grand-jury proceeding). Further, he does not argue that he has good cause for this failure. *See* Rule 12(c) (providing that the court may consider an untimely Rule 12(b)(3) motion "if the party shows good

---

[9] The district court granted the disclosure to the defense of certain grand-jury materials before trial. Mr. Griffith's appellate arguments do not relate to that order.

cause"). "[W]e will not review an untimely Rule 12 argument absent good cause." *United States v. Bowline*, 917 F.3d 1227, 1229, 1237 (10th Cir. 2019).[10]

## X. SENTENCE

The district court determined the sentencing range under the United States Sentencing Guidelines (U.S.S.G.) to be 97 to 121 months, and imposed a sentence of 97 months in prison. The *Anders* brief examined the sentence's procedural and substantive reasonableness, and concluded that the district court's calculation of the sentence was appropriate and noted that the sentence was at the low end of the applicable range. Mr. Griffith challenges his sentence on several grounds.

When we review a sentence for reasonableness, our review "includes both a procedural component, encompassing the method by which a sentence was calculated, as well as a substantive component, which relates to the length of the resulting sentence." *United States v. Ortiz-Lazaro*, 884 F.3d 1259, 1261 (10th Cir. 2018) (internal quotation marks omitted). We review the sentence imposed by the district court for an abuse of discretion. *United States v. White*, 782 F.3d 1118, 1128

---

[10] Mr. Griffith asserts he has newly discovered evidence to support his claims of selective and vindictive prosecution, Def. Suppl. Resp. to *Anders* Br. at 8 (Nov. 20, 2018), as well as violations of *Brady v. Maryland*, 373 U.S. 83 (1963), Def. Add'l Suppl. Br. at 1-5 (Dec. 7, 2018). We do not address claims of newly discovered evidence presented for the first time on appeal. *See Smith v. Sec'y of N.M. Dep't of Corr.*, 50 F.3d 801, 814 n.22 (10th Cir. 1995) (on appeal from order denying post-conviction relief, declining to consider defendant's proffered newly discovered evidence because it was not presented to the district court); *accord United States v. Torres*, 258 F.3d 791, 793 n.4 (8th Cir. 2001) (refusing to consider claim of newly discovered evidence presented for the first time on appeal); *United States v. Boberg*, 565 F.2d 1059, 1062 (8th Cir. 1977) (same).

(10th Cir. 2015). "A district court exceeds its discretion when it imposes a sentence that is arbitrary, capricious, whimsical, or manifestly unreasonable." *Id.* at 1129 (internal quotation marks omitted). In reviewing a sentence for procedural reasonableness, "we review the district court's legal conclusions *de novo* and its factual findings for clear error." *Id.* (internal quotation marks omitted).

In the district court, Mr. Griffith challenged the two-level increase because he "used violence, made a credible threat to use violence, or directed the use of violence." U.S.S.G. § 2D1.1(b)(2). This increase was based on a video taken following the police response to a call of shots fired on Mr. Griffith's property on September 27, 2016. Mr. Griffith told a police officer that "if [the intruders] come back, there's gonna be dead bodies on my property." R. Vol. 3, at 38 (internal quotation marks omitted). At that time, he was holding an AK-47-style rifle and said, "I got SKs, AKs, ARs," and threatened to shoot any intruders. *Id.* (internal quotation marks omitted). The district court rejected Mr. Griffith's argument that the increase was not warranted because the threats were made in response to an attack on his home, not in conjunction with his drug-possession crime. The court found that he "was protecting not only his family, but also his property, and his property included marijuana." *Id.* at 38-39. Based on our review of the record, we conclude that this sentencing fact was established by a preponderance of the evidence. *See United States v. Olsen*, 519 F.3d 1096, 1105 (10th Cir. 2008) (stating sentencing facts ordinarily "need only be proven by a preponderance [of the evidence]").

Accordingly, the district court did not abuse its discretion in imposing this two-level increase.

Mr. Griffith did not raise his other objections to his sentence in the district court. Therefore, we liberally construe his pro se filings as requesting plain-error review on the remaining claims. *See United States v. Archuleta*, 865 F.3d 1280, 1290 (10th Cir. 2017) (holding failure to object at sentencing mandated only plain-error review).

But even though we review Mr. Griffith's other sentencing challenges for plain error, we decline to consider Mr. Griffith's challenge to the base offense level based on the amount of marijuana. He asserts that this did not account for the marijuana plants drying out between harvest and weighing. Relatedly, he claims the total plant count did not consider that some of the plants were root balls, not plants. Mr. Griffith's failure to present these claims to the district court does not invoke even plain-error review. If Mr. Griffith had raised these arguments to the district court, the court "could have heard evidence and made findings regarding the factual question[s] at issue. . . . [P]lain error review is not appropriate when the alleged error involves the resolution of factual disputes." *United States v. Smith*, 531 F.3d 1261, 1271 (10th Cir. 2008) (internal quotation marks omitted).

Mr. Griffith also asserts that his sentence was incorrectly based on the total marijuana plant count, when he should have been held responsible for only the plants and processed marijuana he owned. He also objects to a two-level increase for maintaining a premises for the purpose of manufacturing or distributing a controlled

23

substance. These claims are based on his argument that his marijuana operation was legal under Colorado law, an argument we have rejected.

Mr. Griffith challenges the two-level increase for possession of a dangerous weapon, pursuant to U.S.S.G. § 2D1.1(b)(1) ("If a dangerous weapon (including a firearm) was possessed, increase by 2 levels."). He contends that on the day the search warrant was executed on his property, he did not possess a weapon. Rather, he maintains that the two times he did possess a weapon – September 27, 2016, and October 2, 2016 – his possession was not in furtherance of a drug crime, but instead, was in defense of his home and family. The enhancement is applicable "unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, cmt. n.11(A). We conclude that applying the two-level increase under these circumstances was not an abuse of discretion.

Next, Mr. Griffith challenges the base offense level of 20 for possessing a semiautomatic firearm. He contends the correct base offense level is 14, under U.S.S.G. § 2K2.1(a)(6) (setting the base offense level at 14 if "the defendant . . . was a prohibited person at the time [he] committed the instant offense"), because he was a "prohibited person" as described in 18 U.S.C. § 922(g) ("an unlawful user of . . . any controlled substance"). But § 2K2.1(a)(4)(B) provides for a base offense level of 20 if the offense involved a semiautomatic firearm capable of accepting a large-capacity magazine and was committed by a prohibited person. Furthermore, § 2K2.1(a) directs application of the greatest of the potentially applicable base offense levels. We find no error in the district court's application of a base offense level of 20.

24

Mr. Griffith also objects to a four-level increase because he "used or possessed any firearm or ammunition in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). He argues that the increase was improper because there was no witness to his use of a firearm during any drug trafficking offense, and there was trial testimony that he used guns for target practice. But this does not negate a finding that Mr. Griffith used or possessed a firearm in connection with drug trafficking. Thus, he has not demonstrated error in the district court's application of this provision.

Mr. Griffith also objects to a six-level increase for possessing between 25 and 99 firearms. He argues that the jury did not convict him of this. "[A]ny fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). But where a fact found by the sentencing judge merely increases the Guidelines range without increasing the defendant's sentence above the statutory maximum, *Apprendi* does not apply. *United States v. Willis*, 476 F.3d 1121, 1131 n.3 (10th Cir. 2007). The district court's finding that Mr. Griffith possessed between 25 and 99 firearms did not increase his sentence above the statutory maximum. The statutory maximum was 10 years (120 months). *See* 18 U.S.C. § 924(a)(2) ("Whoever knowingly violates [18 U.S.C. § 922(g)] shall be fined as provided in this title, imprisoned not more than 10 years, or both."). Mr. Griffith was sentenced to 97 months, or 8 years and one month. We do not consider Mr. Griffith's related argument that most of his weapons were not able to shoot ammunition and/or

25

were antiques, because he did not raise this claim to the district court for the court to make findings on this factual question.  *See Smith*, 531 F.3d at 1271.

Finally, Mr. Griffith claims he was entitled to a three-level decrease for acceptance of responsibility, even though he pled not guilty to the charges and went to trial.  He asserts he is entitled to the decrease because he did not deny growing marijuana.  Although "conviction by trial . . . does not automatically preclude a defendant from consideration for such a reduction," "the adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial." *United States v. Benoit*, 713 F.3d 1, 24 (10th Cir. 2013) (internal quotation marks omitted).  "[T]he question is not whether defendant actively asserted his innocence, but whether he clearly demonstrated acceptance of his guilt."  *Id.* (brackets and internal quotation marks omitted).  Here, Mr. Griffith "contested many aspects of the government's case."  *Id.* (brackets and internal quotation marks omitted).  Therefore, because Mr. Griffith "'put the government to its burden of proof at trial,'" we determine "that the district court did not clearly err in denying the acceptance of responsibility adjustment under these circumstances."  *Id.* (quoting U.S.S.G. § 3E1.1 cmt. n.2).

We thus reject Mr. Griffith's claims that his sentence is procedurally unreasonable.  It does not appear from his appellate briefing that he challenges his sentence as substantively unreasonable, but even so, we note that his "within-Guidelines sentence is entitled to a presumption of substantive

26

reasonableness on appeal," *United States v. Craig*, 808 F.3d 1249, 1261 (10th Cir. 2015) (internal quotation marks omitted). We affirm the sentence.

## XI. REMAINING ISSUES

Mr. Griffith contends dismissal is required because the indictment was not presented in open court and "no examining trial was allowed." Def. Suppl. Resp. to *Anders* Br. at 16 (Nov. 20, 2018). The first assertion is belied by the record, *see* R. Vol. 3, at 107-08 (district court read indictment while all parties, attorneys, court reporter, and jury were in the courtroom), and the second is based on challenges to the grand-jury proceedings, a claim we have already rejected.[11]

Mr. Griffith seeks an evidentiary hearing "to determine whether his conduct was completely authorized by State and Federal law." Def. Resp. to Gov't Br. at 10 (Jan. 16, 2019) (brackets and internal quotation marks omitted). He relies on a statement by the Ninth Circuit that "[i]f [the Department of Justice] wishes to continue these prosecutions [for federal marijuana offenses], Appellants are entitled to evidentiary hearings to determine whether their conduct was completely authorized by state law . . . ." *United States v. McIntosh*, 833 F.3d 1163, 1179 (9th Cir. 2016). But even if we were to apply this Ninth-Circuit holding, a remand for a hearing would not be required because, as discussed herein, there was undisputed evidence that Mr. Griffith was not in full compliance with Colorado law. *See United States v.*

---

[11] Mr. Griffith contends his trial counsel was ineffective for not requesting the grand-jury array. We do not address this claim on direct appeal. *See Calderon*, 428 F.3d at 931.

*Kleinman*, 880 F.3d 1020, 1028–29 (9th Cir. 2017), *cert. denied*, 139 S. Ct. 113 (2018) (holding no hearing is required for individuals whose alleged conduct was unauthorized under state law, such as sale of marijuana to out-of-state customers in violation of state law). Lastly, Mr. Griffith relies on dicta in *Green Solution Retail, Inc. v. United States*, 855 F.3d 1111 (10th Cir. 2017), *cert. denied*, 138 S. Ct. 1281 (2018). There, this court observed that "while today prosecutors will almost always overlook federal marijuana distribution crimes in Colorado, it does not mean the 'tax man' is willing to turn a blind eye." *Id*. at 1114 (internal quotation marks omitted). The court then addressed the appellants' claims concerning the IRS audit of their tax returns. *Id*. The court acknowledged that distribution of marijuana is "still illegal federally" and that the decision not to enforce applies only to those who buy or sell marijuana in compliance with state law. *Id.* Once again, even this dicta does not apply to Mr. Griffith because he was not in compliance with Colorado law. Thus, an evidentiary hearing is not warranted.

## XII.  CONCLUSION

After a full examination of the record and consideration of all briefs, we determine that there are no non-frivolous issues upon which Mr. Griffith has a basis for appeal. Therefore, we dismiss this appeal and grant counsel's motion to withdraw.

We grant Mr. Griffith's motions (1) to file an additional supplemental response to the *Anders* brief, (2) to correct the government's erroneous assertion that he claimed to be a "sovereign citizen," and (3) "to file common law administrative

procedures and remedies." We deny as moot his motion to abate this appeal pending

the Supreme Court's decision on certiorari from *Gamble v. United States*,

694 F. App'x 750 (11th Cir. 2017), *aff'd*, No. 17-646, 2019 WL 2493923 (U.S. June

17, 2019). We also deny as moot his motions for his appellate counsel to withdraw.

### APPEAL NO. 18-1054

In appeal No. 18-1054, Mr. Griffith, proceeding pro se, challenges an order

entered in the underlying criminal case denying his post-judgment motion seeking to

dismiss the indictment.[12] The district court determined that it lacked jurisdiction to

adjudicate the motion because his direct appeal was still pending.

"Typically, the filing of a notice of appeal is an event of jurisdictional

significance—it confers jurisdiction on the court of appeals and divests the district

court of its control over those aspects of the case involved in the appeal." *United*

*States v. Madrid*, 633 F.3d 1222, 1226 (10th Cir. 2011) (brackets and internal

quotation marks omitted). And although "appellate courts have carved out . . .

exceptions to the general rule that allow district courts to address certain matters

when judicial efficiency is thereby enhanced," *id.*, Mr. Griffith's post-judgment

motion to dismiss does not meet any of the exceptions. *See id.* at 1226-27

(identifying exceptions).

Mr. Griffith argues that because he styled his post-judgment motion to dismiss

as a writ of coram nobis, the district court had jurisdiction to rule on it. But we are

---

[12] We liberally construe Mr. Griffith's pro se filings, but we do not act as his advocate. *See Garrett*, 425 F.3d at 840.

not bound by a pleading's title; rather, we consider its substance. *United States v. Baker*, 718 F.3d 1204, 1208 (10th Cir. 2013). The motion offered an additional ground for reversal, so the district court correctly held that it lacked jurisdiction.[13]

Therefore, we dismiss appeal No. 18-1054.

---

[13] Even if the court had characterized the motion as requesting a writ of coram nobis, Mr. Griffith would not have been entitled to relief. *See United States v. Torres*, 282 F.3d 1241, 1245 (10th Cir. 2002) ("[A] prisoner may not challenge a sentence or conviction for which he is currently in custody through a writ of coram nobis.").