**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

BRADLEY PAUL ARTHURS,

    Defendant - Appellant.

No. 20-6068
(D.C. Nos. 5:19-CV-01131-HE &
5:14-CR-00243-HE-1)
(W.D. Okla.)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]
_____

Before **PHILLIPS**, **MURPHY**, and **McHUGH**, Circuit Judges.
_____

Bradley Paul Arthurs, a federal prisoner convicted by a jury for possessing a

firearm after a past felony conviction, seeks a Certificate of Appealability (COA) to

appeal the district court's dismissal of his 28 U.S.C. § 2255 petition.[1] Relying on *Rehaif*

*v. United States*, 139 S. Ct. 2191 (2019), Arthurs argues that the district court erred by

failing to instruct the jury that, under 18 U.S.C. § 922(g)(1), the government had to

establish at trial that Arthurs knew he was a felon when he possessed the firearm. We

_____

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Arthurs proceeds pro se, so we liberally construe his habeas petition and his arguments, "but we do not act as his advocate." *United States v. Griffith*, 928 F.3d 855, 864 n.1 (10th Cir. 2019) (citing *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005)).

agree with Arthurs that the district court erred, but we conclude that the error was harmless. We therefore deny a COA and dismiss this case.

## BACKGROUND

On August 20, 2014, a federal grand jury sitting in the Western District of Oklahoma charged Arthurs with being a felon in possession of a firearm. 18 U.S.C. § 922(g)(1). In October of that year, Arthurs took the case to trial.

At trial, a lieutenant from the Oklahoma County Sheriff's Office testified that, while responding to an early-morning call from a concerned homeowner, he had found Arthurs passed out and slumped over in the driver's seat of a pickup truck parked in the homeowner's driveway. According to the lieutenant, after he had helped Arthurs out of the truck, he saw in plain sight a firearm wedged between the truck's front seats. A sergeant and a deputy of the Oklahoma County Sheriff's Office corroborated the lieutenant's testimony, explaining that they had arrived on the scene after the lieutenant and that they, too, had observed the firearm in plain sight.

The deputy further testified that, once he had brought Arthurs to the jail for booking, Arthurs said, "What gun? I can't have a gun," when one of the booking officers advised him that he would be charged with being a felon in possession. R. vol. 2 at 104:2–8 (internal quotation marks omitted). At trial, the reason why Arthurs could not have a gun was undisputed—invoking *Old Chief v. United States*, 519 U.S. 172 (1997), Arthurs had stipulated (and the court had told the jury) that "[b]efore the date listed on the indictment, on or about July 23rd, 2014, the defendant, Bradley Paul Arthurs, had been convicted of a felony, that is a crime punishable by a term of imprisonment

2

exceeding one year." R. vol. 2 at 48:5–8. With this stipulation, Arthurs effectively barred the government from "introducing any evidence as to the nature or substance of the conviction," because in a § 922(g)(1) prosecution such "additional information generally will be overshadowed by its prejudicial effect under Federal Rule of Evidence 403." *United States v. Wacker*, 72 F.3d 1453, 1473 (10th Cir. 1995). And here, the district court applied this bar, sustaining Arthurs's objection to the jury's hearing about his past conviction and explaining that "the potential for prejudice" if that were to occur would be "substantial." R. vol. 2 at 34:25–36:1.

But even though the court prevented the government from introducing this evidence, it did not stop the government from playing for the jury two recorded phone calls that Arthurs made shortly after his arrest. *United States v. Arthurs*, 647 F. App'x 846, 848–49 (10th Cir. 2016) (unpublished) (discussing this evidence while considering Arthurs's direct appeal). In the first, an unidentified woman chastised Arthurs, reminding him that she had told him earlier "that he 'couldn't have that pistol.'"[2] *Id.* at 848. In the second, Arthurs "pleaded with [a different unidentified woman] to say she was in the truck and the gun was hers." *Id.* at 849.

---

[2] Arthurs argued on appeal that, even though he remained silent after the woman said this, the district court improperly admitted this recording as an adoptive admission. *Arthurs*, 647 F. App'x at 848. We did not resolve that issue on appeal. *Id.* at 848–49. In this collateral proceeding, Arthurs does not raise this evidentiary issue in his § 2255 petition or in his brief and COA application, so we do not analyze the admissibility of the first phone call here. *See, e.g.*, *Hammon v. Ward*, 466 F.3d 919, 926 n.8 (10th Cir. 2006) (refusing to consider an issue a habeas petitioner did not raise in his habeas petition).

In closing, Arthurs's attorney underscored Arthurs's booking statement—"Gun? What gun? I can't have a gun." R. vol. 2 at 169:13–15 (internal quotation marks omitted). Arthurs would not have made that statement, his attorney claimed, if he had known that the firearm was in the truck.

The jury was not convinced. It found that the government had satisfied its burden of proving Arthurs guilty, at least according to the district court's jury instructions.[3] Despite Arthurs's contention otherwise, the court concluded that § 922(g)(1) includes no requirement that the defendant know of his prohibited status while possessing a firearm, so the court refused to provide such an instruction.

After the jury convicted Arthurs, the district court sentenced him to 120 months' imprisonment. Arthurs directly appealed his conviction and his sentence, and this court affirmed his conviction.[4] *Arthurs*, 647 F. App'x at 850. Arthurs filed a petition for a writ

---

[3] The district court's instructions required the jury to consider (1) whether "[t]he defendant knowingly possessed the firearm alleged in the indictment"; (2) whether "[t]he defendant was convicted of a felony . . . before he possessed the firearm"; and (3) whether "[b]efore the defendant possessed the firearm, the firearm had moved at some time from one state to another." R. vol. 1 at 26.

[4] We remanded for resentencing because the district court had incorrectly enhanced Arthurs's guidelines range by four levels under U.S. Sentencing Guidelines Manual § 2K2.1(b)(6)(B) (U.S. Sentencing Comm'n 2014), which called for such an enhancement when the defendant "used or possessed any firearm or ammunition in connection with another felony offense[.]" The district court had relied on Arthurs's past Oklahoma conviction for possessing Trazodone pills as the "other" felony offense, but we accepted Arthurs's argument that "the unlawful possession of Trazodone isn't a felony in Oklahoma[.]" *Arthurs*, 647 F. App'x at 850. On remand, the district court sentenced Arthurs to 114 months' imprisonment.

4

of certiorari, which, on October 3, 2016, the Supreme Court denied. *Arthurs v. United States*, 137 S. Ct. 254 (2016).

On December 3, 2019, Arthurs filed with the district court a habeas petition under 28 U.S.C. § 2255, seeking to vacate his conviction.[5] He raised one argument: in light of the Court's 2019 decision in *Rehaif*, 139 S. Ct. 2191, the district court had erred in 2016 by omitting in the jury instructions an element of the charged offense. In *Rehaif*, the Supreme Court concluded that § 922(g)(1) includes as an element that a defendant "knew he belonged to the relevant category of persons barred from possessing a firearm." *Id.* at 2200; *see also* § 922(g)(1) (including convicted felons in that category of persons). Because the district court had not instructed the jury that this is an element of the offense, Arthurs requested that the district court grant "a retrial or acquittal of [his] sentence." R. vol. 1 at 13.

Though Arthurs had preserved this issue for collateral review by raising it at trial and during his direct appeal, the district court ruled that the *Rehaif* error did not warrant a retrial or acquittal. Applying the harmless-error standard that controls on collateral

---

[5] Under § 2255(f)(1), a one-year statute of limitations for § 2255 petitions starts running on "the date on which the judgment of conviction becomes final[.]" Here, Arthurs's conviction became final on October 3, 2016, when the Supreme Court denied certiorari. *See United States v. Prows*, 448 F.3d 1223, 1227 (10th Cir. 2006). So Arthurs's petition was due on October 3, 2017, meaning that he missed the filing deadline by over two years. Nonetheless, in the district court, the government conceded that Arthurs's petition "was potentially timely raised," R. vol. 2 at 269 n.1, because he had filed it within a year of the Court's decision in *Rehaif*. *See* § 2255(f)(3). In view of the government's concession, we need not address whether Arthurs's petition is timely under § 2255(f)(3). *See United States v. Miller*, 868 F.3d 1182, 1185–86 (10th Cir. 2017) (explaining that the government may waive a § 2255(f)(3) limitations defense because "a limitations defense is not jurisdictional" (citation omitted)).

review, *see Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993), the court concluded that "the erroneous elements jury instruction given in this case did not have a substantial and injurious effect or influence in determining the jury's verdict," R. vol. 1 at 44. The court cited two grounds for that conclusion: (1) the jury knew about the *Old Chief* stipulation; (2) the government would have been able to introduce evidence of Arthurs's past felony conviction—which also happened to be a felon-in-possession conviction—to satisfy the *Rehaif* element had *Rehaif* then been the law of the land.

Arthurs now seeks a COA to appeal the district court's ruling.

## DISCUSSION

### I.    The COA Standard

Arthurs must obtain a COA before he can appeal the district court's dismissal of his habeas petition. *See* 28 U.S.C. § 2253(c)(1)(B). Under § 2253(c)(2), courts may issue a COA only when a habeas petitioner provides "a substantial showing of the denial of a constitutional right." The Supreme Court has instructed that a habeas petitioner satisfies this standard by showing "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

### II.    The *Rehaif* Error Was Harmless.

No dispute exists here that the district court erred by failing to instruct the jury that the government bore the burden of demonstrating that Arthurs knew he "belonged to the relevant category of persons barred from possessing a firearm." *Rehaif*, 139 S. Ct. at 2200; *cf. United States v. Trujillo*, 960 F.3d 1196, 1201 (10th Cir. 2020) ("While the

district court correctly applied the law as it existed at the time, the court's failure to inform Defendant of the knowledge-of-status element constitutes error that is plain on appeal." (citation omitted)). This was an error of constitutional dimensions. *See Neder v. United States*, 527 U.S. 1, 8–9 (1999); *United States v. McFadden*, 823 F.3d 217, 224 (4th Cir. 2016) (citing *Neder* for this proposition). Even so, this court has ruled that *Rehaif* error is not structural; therefore, it does not require automatic reversal. *Trujillo*, 960 F.3d at 1207;[6] *Underwood v. Royal*, 894 F.3d 1154, 1176 (10th Cir. 2018) (noting that structural errors "require automatic reversal"). Instead, a trial court's omitting a crime's element in a jury instruction is a "trial-error[] subject to harmless-error review." *See Hedgpeth v. Pulido*, 555 U.S. 57, 60–61 (2008) (per curiam) (citing *Neder*, 527 U.S. 1, for the proposition that "omission of an element of an offense" is a trial error) (other citations omitted).

As mentioned, harmless-error review in a habeas case is governed by the Court's decision in *Brecht*, 507 U.S. at 623. Per *Brecht*, a trial error is harmless unless the reviewing court concludes that it "resulted in actual prejudice" by having a "substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 627, 637 (internal quotation marks and citations omitted). The Court has since clarified that when "the record of the trial" leaves an appellate court "in grave doubt about whether a trial

---

[6] *Trujillo* involved a district court's failure "to inform a defendant of the knowledge-of-status element" during a plea colloquy, not a failure to inform a jury about this element in the jury instructions. *See* 960 F.3d at 1204–05. But we see no reason why that difference makes the error structural here and prevents us from applying harmless-error review, especially because the Court has explicitly stated that "the omission of an element is subject to harmless-error analysis[.]" *Neder*, 527 U.S. at 10.

error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict,' that error is not harmless." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995).

Relying on evidence that the parties presented to the jury,[7] we conclude that the *Rehaif* error was harmless. Here, the jury heard that Arthurs had stipulated that he was a felon at the time of the offense (although he did not stipulate that he knew he was a felon). Some courts have reasoned that such stipulations, though not dispositive, can provide a basis for a jury to infer that the defendant knew of his or her prohibited status. *See, e.g.*, *United States v. Raymore*, 965 F.3d 475, 485 (6th Cir. 2020); *United States v. Staggers*, 961 F.3d 745, 757 (5th Cir. 2020); *United States v. Reed*, 941 F.3d 1018, 1022 (11th Cir. 2019).

---

[7] Citing Arthurs's Presentence Investigation Report, the government asserted in the district court that Arthurs must have known about his prohibited status, given that one of his previous convictions was a felon-in-possession conviction. The district court concluded that, together with "the evidence presented at trial," evidence of "[t]his prior conviction indisputably shows that defendant knew he was a felon[.]" R. vol. 1 at 44. We do not rely on this extra-trial evidence, though, because the error in this case is a trial error—i.e., an "error which occurred *during the presentation of the case to the jury*, and which may therefore be quantitatively assessed in the context of other evidence *presented* in order to determine whether its admission was harmless[.]" *Arizona v. Fulminante*, 499 U.S. 279, 307–08 (1991) (emphasis added); *see also United States v. Maez*, 960 F.3d 949, 961 (7th Cir. 2020). In *Maez*, a *Rehaif*-error case involving plain-error review, the Seventh Circuit ruled that courts can consider "highly reliable information outside the trial records"—such as a defendant's Presentence Investigation Report—only for prong four of plain-error review. 960 F.3d at 963. But for prong three, which generally "calls for the same inquiry as 'harmless error' analysis," the Seventh Circuit explained that courts should "look[] only to the trial record to measure the effect of trial error." *Id.* at 961 (citations omitted). Though this case does not require us to resolve whether *Brecht*-harmless-error review lends itself to extra-trial evidence in this context (the trial evidence here shows that any error was harmless), a future panel may need to resolve whether courts in similar circumstances can look beyond the trial record.

But this case has more. The jury heard undisputed testimony that, when the booking officers told him that his charge was being a felon in possession of a firearm, Arthurs stated, "What gun? I can't have a gun." Unlike the stipulation, in our view this testimony is dispositive—how could Arthurs have known that he was prohibited from possessing a gun if he did not know that he was a convicted felon? From this testimony, the jury could have inferred the obvious: Arthurs knew that he could not possess a gun because he knew that he was a felon. What is more, the jury also heard a phone recording in which, shortly after his arrest, an unidentified woman stated that before the arrest she had told Arthurs "that he 'couldn't have that pistol.'" *Arthurs*, 647 F. App'x at 848. If before his arrest Arthurs knew this, then it is inconceivable that Arthurs did not know that he was a felon at the time of his arrest.

In *Chapman v. California*, 386 U.S. 18, 24 (1967), the Supreme Court ruled "that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." Yet in the habeas context, *Brecht* "rejected the *Chapman* standard in favor of the more forgiving standard of review," *Fry v. Pliler*, 551 U.S. 112, 116 (2007) (citation omitted), pardoning an error as harmless when it does not have a "substantial and injurious effect or influence in determining the jury's verdict," *Brecht*, 507 U.S. at 623 (citation omitted). Applying this forgiving standard, we conclude that Arthurs's *Old Chief* stipulation, the undisputed trial testimony about his booking statement, and the audio recording establish that Arthurs knew he was a felon prohibited from possessing a firearm, rendering undebatable the district court's harmless-error conclusion. *Cf. Neder*, 527 U.S. at 17 (explaining that

9

under the even more demanding *Chapman* standard, when "the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless"). Because Arthurs was not prejudiced by the erroneous jury instruction, reasonable jurists could not debate that habeas relief is unavailable. *See Brecht*, 507 U.S. at 637.

## CONCLUSION

Reasonable jurists could not debate that the district court's failure to instruct the jury on the *Rehaif* element was harmless error. Accordingly, we deny a COA and dismiss this case.

Entered for the Court

Gregory A. Phillips
Circuit Judge